No. 12147

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

PRENTICE LUMBER COMPANY, INC.,

Plaintiff and Appellant,

-vs-

HENRY J. HUKILL et al.,

Defendants and Respondents.

---

Appeal from: District Court of the Third Judicial District,
Honorable Sid G. Stewart, Judge presiding.

Counsel of Record:

For Appellant:

Boone, Karlberg & Haddon, Missoula, Montana.
Sam E. Haddon argued, Missoula, Montana.

For Respondents:

Boyd and Radonich, Anaconda, Montana.
Robert J. Boyd argued, Anaconda, Montana.
Bolkovatz and Romine, Helena, Montana.
William L. Romine appeared, Helena, Montana.
Loble, Picotte and Loble, Helena, Montana.
William G. Sternhagen appeared, Helena, Montana.
Garlington, Lohn and Robinson, Missoula, Montana.
George D. Goodrich appeared, Missoula, Montana.

---

Submitted: September 20, 1972

Decided: DEC 1 1972

Filed: DEC 1 1972

*Thomas J. Kearney*
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Plaintiff corporation filed this action against defendant directors of Elliston Lime Company, a Montana corporation, seeking a joint and several judgment against the directors for an obligation allegedly owed by Elliston Lime Company to plaintiff. The action seeks to impose a statutory personal liability on the directors by reason of their failure to file annual statements of the corporation, pursuant to section 15-811, R.C.M. 1947. From an order of the district court of Powell County denying plaintiff's motion to file a second amended complaint and dismissing the action, plaintiff appeals.

A history of the litigation between plaintiff and Elliston Lime Company and its directors furnishes the background for determination of the issues in this appeal. Case #1 was filed on July 14, 1967, in the district court of Missoula County by plaintiff herein against the Elliston Lime Company, seeking judgment for the balance owed on an itemized account dated June 30, 1967, in the sum of $20,752.13. An attachment was levied against Elliston's property. Subsequently a default judgment was entered in favor of plaintiff Prentice Lumber Co. against Elliston for $20,971.15. An execution sale was held at which plaintiff purchased the attached property of Elliston for $500.

Thereafter on August 2, 1968, Case #2, the instant action, was filed by plaintiff against the directors of Elliston seeking a joint and several judgment against the directors of Elliston Lime Company for the balance of the judgment against Elliston in Case #1. The amount sought was $20,903.76 as of January 10, 1968, representing the amount of the original judgment in Case #1, less a credit for plaintiff's purchase of Elliston's property at the execution sale plus interest on the balance of the judgment.

Thirteen days later on August 15, 1968, Elliston filed Case #3, a separate and independent action to set aside the default judgment in Case #1. On March 2, 1970, the district court of Missoula County set aside this default judgment and on appeal to this Court was affirmed on March 16, 1971. Elliston Lime Co. v. Prentice Lumber Co., 157 Mont. 64, 483 P.2d 264.

In the meantime on September 3, 1968, plaintiff herein filed a first amended complaint in Case #2, the instant action. This did not differ substantially from the original complaint, but supplied certain factual omissions in the original complaint relating to the directors' failure to file the required annual statements. The individual directors filed consolidated motions (1) to dismiss the first amended complaint, (2) to change the venue of the action to Powell County, and (3) to continue further proceedings pending judgment in Case #3. On January 20, 1969, the district court of Missoula County (1) denied the motion to dismiss, (2) granted the change of venue to Powell County, and (3) reserved ruling on continuance for the district court of Powell County.

On June 25, 1971, some three months after we affirmed the setting aside of the default judgment in Case #1, plaintiff herein moved the district court of Powell County for leave to file a second amended complaint in the instant action. In substance, the proposed second amended complaint substituted the alleged underlying indebtedness of Elliston to plaintiff for the balance owing on the judgment set aside in Case #1, and sought to hold the directors personally liable for the same by reason of their failure to file annual statements during the period this indebtedness was incurred pursuant to section 15-811, R.C.M. 1947. The amount sought in the prayer was $19,845.11, together with interest from January 10, 1968.

After hearing, the district court of Powell County denied plaintiff's motion for leave to file the second amended complaint

- 3 -

and granted the "motion of defendants to dismiss the cause of action". Plaintiff now appeals from the order of the district court denying plaintiff leave to file the second amended complaint and dismissing the action.

The issue which plaintiff assigns for review is the correctness of the district court's order. Additionally, defendants raise a second issue---whether the order from which the appeal is taken is an appealable order?

Initially, we direct our attention to the appealability of the district court's order denying leave to amend and dismissing the action. Defendants point out that this order is not enumerated as one of the orders from which an appeal may be taken under Rule 1, M.R.App.Civ.P. They liken the order here to an order sustaining a demurrer under Montana's former practice prior to adoption of the Montana Rules of Civil Procedure and cite Pentz v. Corscadden, 49 Mont. 581, 144 P. 157, as authority that an order sustaining a demurrer under Montana's former practice was not appealable. Defendants point out that under the present Montana Rules of Civil Procedure a motion to dismiss under Rule 12, M.R.Civ.P., is equivalent to the use of demurrers under our former practice, citing Payne v. Mountain States Tel. & Tel., 142 Mont. 406, 385 P.2d 100, and Rambur v. Diehl Lumber Co., 143 Mont. 432, 391 P.2d 1, in support. Accordingly, they contend that a motion to dismiss is not an appealable order.

At the outset, we observe that no judgment was entered for defendants pursuant to the district court's order of dismissal. Had a judgment been entered, it would clearly be appealable as a final judgment under Rule 1(a), M.R.App.Civ.P. In reviewing such final judgment, the district court's denial of leave to amend could be reviewed as well as its order of dismissal under the provisions of Rule 2, M.R.App.Civ.P., which provides in pertinent part:

- 4 -

"Upon appeal from a final judgment, the court
may review * * * any intermediate order or
decision * * * which involves the merits, or
necessarily affects the judgment * * *."

In our view, substance rather than form is controlling.
The effect of the district court's order is substantially the
same as a judgment for defendants. As matters now stand, plaintiff
is out of court and denied relief just as completely as if judg-
ment had been entered against it. This Court has recognized this
situation and has recently rendered decisions on the merits in
appeals from orders dismissing complaints. See: Rooney v.
Agricultural Ins. Co., 156 Mont. 118, 476 P.2d 783; Smith v.
Davis, 156 Mont. 150, 477 P.2d 114; Kielmann v. Mogan, 156 Mont.
230, 478 P.2d 275. While we recognize that these cited decisions
did not involve an express ruling on the appealability of the
order of dismissal because that issue was not raised therein,
still the appealability of the order of dismissal is implicit
in these decisions. We perceive no rational basis in fact or
in law for denying the aggrieved party the right of appeal
where the prevailing party neglects to enter a formal judgment
in conformity with the court's ruling. Nor do we believe that
the framers of the Montana Rules of Appellate Civil Procedure
intended to preclude an appeal by the aggrieved party under such
circumstances. Accordingly, we hold that an order dismissing
a complaint and denying leave to amend is equivalent to a final
judgment for purposes of appeal.

Proceeding to plaintiff's issue, i.e. the correctness of
the district court's order refusing leave to amend and dismissing
the complaint, we examine the basic contentions of the parties.

Plaintiff Prentice contends that at the time the original
complaint and first amended complaint were filed the alleged
indebtedness of Elliston to Prentice had been merged in the de-
fault judgment against Elliston, precluding suit on the underlying
indebtedness against the directors. Prentice argues that when

- 5 -

this default judgment was set aside, the underlying obligation was reinstated and only then could Prentice seek to impose a personal statutory liability against the directors based on Elliston's alleged underlying indebtedness to Prentice. Prentice further argues that this was sought to be done by its second amended complaint which related back to the original complaint avoiding the three year statute of limitations, that the amendment should have been allowed, and the action should not have been dismissed.

On the other hand, the directors contend that the proposed second amended complaint is based upon a different obligation than that contained in the two previous complaints, that it seeks recovery of a different amount, covers a different period of time, and is based upon an alleged indebtedness on an account and not a judgment debt. Accordingly, they argue, it does not relate back to the original or first amended complaint and is barred on its face by the statute of limitations. Additionally, they claim none of the complaints alleges that the action was brought within the three year statute of limitations which must be affirmatively alleged to state a claim for relief under the statute imposing personal liability on the directors. Thus, they contend, the district court was correct in dismissing the action.

Two separate considerations underlie determination of the correctness of the district court's order: (1) Does the proposed amendment relate back to the original or first amended complaint, thus avoiding the bar of the statute of limitations? (2) Should the amendment have been allowed?

Directing our attention to the first consideration, we note that although the bar of the statute of limitations is an affirmative defense to be pleaded by answer (Rule 8(a), M.R.Civ.P.) and need not be negatived in the complaint, the better rule permits the court to consider, on application for leave to amend,

- 6 -

whether the proposed amended pleading relates back to the original complaint and so avoids the bar of the statute of limitations. 3 Moore's Federal Practice, § 15.08[4], p. 906; Pasos v. Pan American Airways, Inc., 17 Fed.Rules Serv. 15a.34, Case 1; Walker v. Bank of America National Trust & Sav.Ass'n, 268 F.2d 16.

Rule 15(c), M.R.Civ.P., is the controlling rule and provides in pertinent part:

> "Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

We have not previously had occasion to construe this rule. Accordingly, we refer for guidance to Federal Rule 15(c) which contains identical language to that quoted above, and to federal court decisions construing its meaning and application. In speaking of Federal Rule 15(c), 1A Barron & Holtzoff, Federal Practice and Procedure, § 448, p. 757, has this to say:

> "The general rule of 'relation back' is that a pleading may not be amended to allege a new or different claim or defense unless it arose out of, or is based upon or related to, the claim, transaction or occurrence originally set forth or attempted to be set forth. If the new claim or 'cause of action' meets this requirement, the amendment relates back to the time of the original filing so as to prevent the running of limitations which might otherwise bar the claim."

The following statement from 3 Moore's Federal Practice, § 15.15[3], pp. 1025-1027, delineates the types of amendments that will relate back:

> "* * * Rule 15(c) is based on the concept that a party who is notified of litigation concerning a given transaction or occurrence has been given all the notice that statutes of limitations are intended to afford. Thus, if the original pleading gives fair notice of the general fact situation out of which the claim or defense arises, an amendment which merely makes more specific what has already been alleged, such as by specifying particular acts of negligence under a general allegation of negligence, or remedies a defective pleading, will relate back even though the statute of limitations has run in the interim. Similarly, while it is

> still the rule that an amendment which states
> an entirely new claim for relief based on
> different facts will not relate back, if the
> pleading sufficiently indicates the transaction
> or occurrence on which the claim or defense is
> based, amendments correcting specific factual
> details, such as time and place, as well as other
> items, will relate back."

An amendment that changes only the legal theory of the action will relate back. 3 Moore's Federal Practice, § 15.15[3], p. 1028, and cases cited therein. It is equally clear that an amendment that adds another claim arising out of the same transaction or occurrence will relate back. 3 Moore's Federal Practice, § 15.15[3], p. 1029, and cases cited therein.

In the instant case, the proposed second amended complaint seeks to substitute an indebtedness on account of goods sold and delivered for a judgment indebtedness covering substantially the same account because the judgment was subsequently set aside. The amount sought is slightly different due to accrued interest and credits allowed to a subsequent date. Additionally, the proposed second amended complaint pleads with more particularity the facts rendering the directors personally liable for the debts of the corporation by reason of their failure to file the annual statement. In short, the proposed amendment seeks to substitute the underlying account indebtedness for the judgment indebtedness that was subsequently vacated, and to perfect the basis of personal liability.

In an analogous situation, such amendment was permitted in Green v. Walsh, 21 F.R.D. 15. There the plaintiffs had obtained a judgment by confession in state court and suit was commenced on this judgment in federal court; subsequently the state court judgment was vacated for lack of jurisdiction. The court held that plaintiffs were entitled to amend their pleadings in the federal court action to sue on the underlying promissory note, guarantee, cognovit, and sellers' recourse endorsement, and to have such amendment relate back to the time of filing the original complaint, even though the statute of limitations had

run on part of plaintiffs' underlying claim in the interim. The reasoning of the court was that the general wrong suffered and the general conduct causing the wrong controlled the determination of whether a new and different claim was stated in the amended pleading, and that the specified conduct of defendant upon which plaintiff tries to enforce his claim is to be examined rather than the theory of law on which the action is brought.

Accordingly, we hold that the proposed amendment, if permitted, would relate back to the first amended complaint and avoid the bar of the statute of limitations.

But, should the amendment have been allowed? Rule 15(a), M.R.Civ.P., governs the allowance of amended pleadings and provides as follows:

> "Amendments. A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders." (Emphasis supplied).

This Court has not heretofore had occasion to rule on the question of when leave to amend should be granted and when it should be withheld pursuant to Rule 15. Accordingly, we look to interpretations of identical Federal Rule 15(a) for guidance.

The purpose of Federal Rule 15 is described in 3 Moore's Federal Practice, § 15.02[1], p. 813, in this language:

> "Rule 15 is one of the most important of the rules that deal with pleadings. It re-emphasizes and assists in attaining the objective of the rules on pleadings: that pleadings are not an end in themselves, but are only a means to the proper presentation of a case; that at all times they are to assist, not deter, the disposition of litigation on the merits. * * *"

The United States Supreme Court reiterated the philosophy of Rule 15 in Foman v. Davis, 371 U.S. 178, 83 S. Ct. 227, 9 L ed 2d 222, 226, wherein it held the district court's denial of leave to

amend even after judgment was error where there was no apparent or declared reason for denying leave to amend the complaint:

> "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. [Citing Moore's Federal Practice] If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason---such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--- the leave sought should, as the rules require, be 'freely given'. Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."

Applying these principles to the instant case, we note there is no stated reason for denying leave to amend in the district court's order. Nonetheless the basis for such denial is apparent. The evidence of bad faith on the part of plaintiff appears in the record of Case #3, wherein the default judgment against the corportion was set aside. The face of the judgment in Case #3 contains an express finding that:

> "* * * the testimony shows to the satisfaction of this Court that the President of Prentice Lumber Company by his actions and representations to the Elliston Lime Company officers caused Elliston Lime Company officers to believe the litigation was merely for the purpose of providing some security to Prentice Lumber Company to cover whatever amount was owed to them."

It also contains an express finding:

> "* * * that the judgment should not be for the full sum of $20,971.15, and it appears that justice requires that the default be set aside and the matter be set down for hearing on the merits."

This judgment was dated March 2, 1970, and affirmed on appeal to this Court on March 16, 1971. No further proceedings to establish the liability of Elliston to Prentice has been taken.

Furthermore, the evidence received in Case #3 indicates that the default judgment in favor of Prentice against Elliston was entered without the knowledge of the president or directors

- 10 -

of Elliston; that thereafter the employees of the Elliston cut stock plant were carried on the payroll of Prentice as employees of Prentice; that the lumber processed at the Elliston cut stock plant was sold by Prentice, shipped by Prentice with the shipping orders received by the president of Elliston as agent for Prentice, and the sale proceeds were received by Prentice and credited against the Elliston account.

The evidence further indicates that all dealings were carried on between the president of Elliston and the president of Prentice and such dealings were unknown to the other directors of Elliston. Also entered in evidence was a complaint in mandamus by the other directors and stockholders of Elliston against the president of Elliston accusing him of refusal to produce the books and records of Elliston for their inspection and of wasting and dissipating Elliston's assets. An alternative writ of mandamus was issued requiring Elliston's president to produce these records, including those relating to his dealing with Prentice and the indebtedness of the corporation. In short, the evidence indicates the default judgment was taken without the knowledge of the president or directors of Elliston and that the course of dealings between the president of Elliston and the president of Prentice was withheld from the directors of Elliston. Under such circumstances, we cannot say that the district court abused its discretion in denying Prentice leave to amend in order to assert a personal liability against the directors.

The order of the district court is affirmed.

_Frank R. Harwell_
_____
Associate Justice

- 11 -

We Concur:

_James H. Harrison_
Chief Justice

_John Conway Harrison_

_Gene B. Daly_

_Wesley Castles_
Associate Justices.