No. 13551

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

KENECO, a corporation and
RAYMOND KENICK and BETTY KENIK,

      Plaintiffs and Respondents,

  -vs-

CLYDE CANTRELL and HELEN CANTRELL,

      Defendants and Appellants.

---

Appeal from: District Court of the Eighth Judicial District,
             Honorable Paul Hatfield, Judge presiding

Counsel of Record:

    For Appellants:

        Jardine, Stephenson, Blewett & Weaver, Great Falls,
         Montana
        Dale Schwanke argued, Great Falls, Montana

    For Respondents:

        Cure and Borer, Great Falls, Montana
        Orin R. Cure argued, Great Falls, Montana

---

                 Submitted: June 6, 1977

                 Decided: SEP 16 1977

Filed: SEP 16 1977

_Thomas J. Kearney_
                Clerk

Honorable W. W. Lessley, District Judge, sitting in place of Mr. Chief Justice Paul G. Hatfield.

This litigation arises from a conflict of brothers-in-law in the creation and operation of a family corporation.

Keneco is the family corporation; it sells, installs, and repairs service station equipment. From 1965 to 1970 the only directors and stockholders were Kenik, his wife Elizabeth, and Cantrell and his wife Helen; Helen Cantrell is Raymond Kenik's sister. The wives did not actually participate in the corporation's business.

In 1962 Kenik purchased Marketing Specialties and operated it selling, installing and repairing service station equipment. From 1962 to 1964 Kenik and Cantrell talked of Cantrell becoming an owner with Kenik of the Marketing Specialties business. Before this Cantrell had lived in Great Falls and served as a comptroller in a large department store; he had left that position, purchased and ran a sporting goods store.

Finally, Cantrell sold his sporting goods store and joined Kenik in his business. Cantrell was to, and did run the bookkeeping and all business phases of the corporation. Kenik did actually manage and labor in the day to day operation of the business.

Articles of Incorporation were filed May 12, 1964 and Kenik's small business became Keneco, a corporation on that day. The corporation operated with Kenik as president and Cantrell as vice-president until May 1970, when Cantrell left the corporation.

August 31, 1970, Cantrell filed suit to liquidate Keneco because of a claimed management deadlock. September, 1970, Kenik on behalf of Keneco and himself filed suit against Cantrell for damage alleging fraud and malfeasance by Cantrell. The district court consolidated the two actions for trial.

The court referred the matter to a certified public accountant as referee. The referee's findings of fact and conclusions

- 2 -

with amendments are 88 in number and cover 27 legal pages.

The district court adopted the referee's findings of fact and conclusions of law and made the following conclusions:

(1) That Raymond Kenik is not indebted to Keneco;

(2) That Raymond Kenik is the owner of 19,825 shares of stock of Keneco and Clyde Cantrell is the owner of 12,675 shares of stock of Keneco and that the total is 32,500 shares which is the total number of shares of Keneco stock issued;

(3) That Keneco is indebted to Clyde Cantrell in the sum of $7,432.25 and Clyde Cantrell is indebted to Keneco in the amount of $7,948.28, and that the interest on both of said amounts would approximately offset each other and said total amounts shall be paid without interest;

(4) That Raymond Kenik is the owner of 19,825 shares of stock of Keneco and Clyde Cantrell is the owner of 12,675 shares of stock of Keneco and all stock in excess thereof issued to either Raymond Kenik or Clyde Cantrell shall be cancelled and all stock in excess of such amount shall be by the holder surrendered to Keneco for cancellation;

(5) That Keneco shall pay to Clyde Cantrell the sum of $7,432.25 without interest;

(6) That Clyde Cantrell shall pay to Keneco the sum of $7,948.28 without interest;

(7) That each of the parties hereto shall pay their own costs and attorney's fees;

(8) That Keneco shall pay the costs and expenses of Mack J. Hamilton, referee, with the provision that the same would be apportioned and charged to the parties as determined by the Court;

(9) That the costs and expenses of Mack J. Hamilton, referee, are allowed and approved in the amount of $3,980, which amount has been paid to him by Keneco, and Raymond Kenik shall pay

to Keneco one-half thereof and Clyde Cantrell shall pay to Keneco one-half thereof.

Appellant appeals from both the findings and conclusions and judgment and the cross-appellant appeals only from the conclusions.

The task of the referee and the district court was to determine an equitable and fair redistribution of the issued stock in Keneco in proportion to the correct total owner's equity or ownership of both Kenik and Cantrell. Before the referee or district court could redistribute the stock, they had first to determine Kenik's and Cantrell's correct ownership of that stock.

In this determination the referee and the district court were really involved in an accounting of the operations of this small corporation and the valid, many, and conflicting claims of Kenik and Cantrell. The referee and the lower court approached the factual problem in a two-step process. They first determined what Kenik's and Cantrell's equity or ownership were as of January 1, 1975. Second, they determined for both Kenik and Cantrell which of the ten stock issuances which took place in issue from November 1, 1965, until February 28, 1969, were valid stock issuances in that they were stock issuances supported by adequate consideration for the issuances of that stock. Kenik's 1965 equity or ownership in Marketing Specialties was then added to the value of the issued stock validly issued to him to determine Kenik's total equity or ownership. A small addition of the 1965 equity or ownership plus the value of the validly issued stock was made on behalf of Cantrell to determine the ownership or equity.

To determine the owners' equities as of January 1, 1965, the referee first calculated the assets transferred to Keneco as of January 1, 1965. He then calculated the liabilities assumed

- 4 -

by Keneco as of the same date. By subtracting the liabilities from the assets ($44,626.00 - $33,191.31) the total owners' equities as of January 1, 1965 were determined to be $11,434.69. By determining Cantrell's January 1, 1965 equity to have been $1,040 and by subtracting the $1,040 from the 1965 total owners' equity of $11,434.69, the referee was able to determine Kenik's equity to have been $10,394.69, as of January 1, 1965.

The second step in determining total owners' equities was to determine which of the ten stock issuances were valid stock issuances supported by adequate consideration. The referee determined that $1,200 worth of shares (1,200 shares at $1 per value per share) had been validly issued to Kenik. This $1,200 combined with his 1965 equity of $10,394.69 gave Kenik a total equity of $11,594.69.

Cantrell was found to have had $6,353.06 worth of shares validly issued to him. This $6,353.06 combined with his 1965 equity of $1,040 gave Cantrell a total equity of $7,393.06.

In conclusion III the referee reapportioned the 32,500 shares in the same proportions as the total equities determined in conclusion II. As a result of the reapportionment, Kenik was awarded 61 percent or 19,825 of the total 32,500 shares of stock; Cantrell was awarded the remaining 39 percent or 12,675 shares.

In substance the district court adopted all of the referee's findings and amendments to his findings.

Two peripheral questions of law are argued by the appellants. We look at them before considering the basic issue presented us on this appeal. First, they argue Kenik's acceptance and retention of the stock issuances was ratification. Second, they contend Kenik's claim of fraud (if proven) is barred by the two year statute of limitations, section 93-2607(4), R.C.M. 1947. We disagree and find no merit in those positions.

Cantrell argues that because Kenik signed, accepted and retained the stock issuances that this amounted to ratification by acceptance of the benefits (i.e., the stock issuances). It is true as contended by Cantrell that " * * * Nonassenting stockholders also may be estopped by acts recognizing and amounting to an acquiescence in, or ratification of, the irregular issue * * *." 18 Am Jur 2d, Corporations § 251, p. 774. See also 19 C.J.S. Corporations § 1016 et seq.; State ex rel. Howeth v. D. A. Davidson & Co., 163 Mont. 355, 517 P.2d 722; American B. & T. Co. v. Farmers' E. & M. Co., 63 Mont. 612, 208 P. 594. Ratification, however, is valid only if all of the material facts are known.

> "The general rule as to ratification by acceptance of benefits, of course, applies only where the corporation through its proper officers has knowledge of the facts, and not where it receives and retains the benefits of the unauthorized act or contract in ignorance of the facts, and repudiates the act or contract when it acquires knowledge thereof * * *." 19 C.J.S. Corporations § 1020, p. 503.

Similarly, the Montana Supreme Court has held that "Knowledge is an essential element of 'ratification by acceptance of benefits.'" Alward v. Broadway Gold Min. Co., 94 Mont. 45, 20 P.2d 647, 650, citing Stanton v. Occidental Life Ins. Co., 81 Mont. 44, 261 P. 620. Kenik had no knowledge that Cantrell was not going to adjust the shares issued to Kenik, as Cantrell said he would; Kenik did not ratify the issuances by signing, accepting and retaining them.

Cantrell is estopped from the use of the statute of limitations. Estoppel is used to promote justice, honesty, fair dealing and to prevent injustice. Morris v. Langhausen, 155 Mont. 362, 472 P.2d 860.

Whenever possible, courts will construe statutes of limitations so as to prevent hardship. State ex rel. Steinfort v. District Court, 111 Mont. 216, 107 P.2d 890.

This Court believes that Kenik has established the six essential elements of estoppel including: (1) There must be conduct--acts, language, or silence--amounting to a representation or a concealment of material facts. (2) These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. (3) The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when it was acted upon by him. (4) The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon.

This is clearly the case here. Cantrell arranged ten stock issuances between November 1, 1965 and February 28, 1969. The record indicates that Kenik believed he was not getting his fair share of the issued stock. When he complained about the stock issuances, Cantrell told him that he, Cantrell, was honest and that he was going to make it right; that Cantrell knew what he was doing and it would be taken care of; and that this was a matter of bookkeeping and that things would get straightened out. As a result, Kenik was lulled into a sense of security that "everything would get straightened out." Consequently, his position was changed for the worse. Had he not been lulled into a sense of security, he could have prevented the wrongful issuance of stock to Cantrell. He also could have brought his action much sooner and not have been faced with a statute of limitations problem.

The briefs and positions of appellant and cross-appellant present to us the basic question of whether there was sufficient evidence to support the district court's findings, conclusions

- 7 -

of law and judgment.

This case is primarily a question of fact. Our duty on this appeal is to review the findings of fact and conclusions of law.

This we have done from the findings of the referee adopted by the Court, from the findings of the district court, and from the transcript that included direct and cross-examination of the referee as to his findings.

We determined that the findings and conclusions of law and judgment are supported and justified by evidence. Johnson v. Jarrett, 169 Mont. 408, 548 P.2d 144, 33 St. Rep. 320.

In short, there was evidence presented to the referee and to the district court that was in conflict, but that evidence was substantial and credible. That evidence supports the court's findings and judgment.

                                 were
The referee's findings/adopted by the district court, the district court's findings and judgment are sufficiently supported by evidence before the referee and district court.

Further the direct and cross-examination of the referee as to the basis and reason for his findings and conclusions of fact are before this Court in the transcript of the cause.

Our Court, as recently as Kearns v. McIntyre Construction Co., _____Mont._____, _____P.2d_____, 34 St.Rep. 703 (July 1977), and cases cited there, restated the rule that we need only determine whether there is substantial evidence to support the findings and we will not reverse such findings unless there is a clear preponderance of evidence against the findings. See Cope v. Cope, 158 Mont. 388, 493 P.2d 336; Smith v. Krutar, 153 Mont. 325, 457 P.2d 459, and Spencer v. Robertson, 151 Mont. 501, 445 P.2d 48; Crncevich v. Georgetown Recreation Corporation, 168 Mont. 113, 541 P.2d 56.

Most if not all of the testimony is Kenik's statements

against the statements of Cantrell and the documentation con-
cerned. Clearly, this evidence is conflicting. See McGuire v.
American Honda Company, ____Mont.____, 566 P.2d 1124, 34 St.Rep.
632. Just as clearly there is not a preponderance of evidence
against the court's findings and judgment.

The judgment is affirmed.

_____
Hon. W. W. Lessley, District Judge,
sitting in place of Mr. Chief Justice
Paul G. Hatfield.

We concur:

_____

_____

_____

_____
Justices

- 9 -