No. 86-458

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

YELLOWSTONE CONFERENCE OF THE
UNITED METHODIST CHURCH,

        Plaintiff and Appellant,

-vs-

D.A. DAVIDSON, INC., LARRY DOVER,
WARREN DREW and DICK HUGHES,

        Defendants and Respondents.

---

APPEAL FROM:  District Court of the Fourth Judicial District,
               In and for the County of Missoula,
               The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Paterson, Marsillo, Tornabene & Schuyler; Charles J.
        Tornabene argued, Missoula, Montana

    For Respondent:

        Mulroney, Delaney & Scott; Dexter L. Delaney argued
        for D.A. Davidson, Dover and Hughes, Missoula, Montana
        Milodragovich, Dale & Dye; Lon J. Dale, Missoula,
        Montana
        David Rodli argued for Drew, Missoula, Montana

---

                Submitted:    May 28, 1987

                Decided:    September 10, 1987

Filed:    SEP 10 1987

_Ethel M. Harrison_
                Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Plaintiff Yellowstone Conference of the United Methodist Church (Church) appeals an order of the Fourth Judicial District, Missoula County, dismissing its claim following presentation of the Church's case, for failure to file the claim within the required time period. We affirm.

The following issues are raised on appeal:

1. Did the District Court abuse its discretion when the court denied the Church's motion to amend its complaint?

2. Did the District Court err when it held that § 27-2-204(1), MCA, barred the Church's cause of action?

3. Did the District Court abuse its discretion when it failed to specifically separate its findings of fact and conclusions of law?

Plaintiff and appellant Church, a Montana corporation, maintained financial accounts with funds received from local Methodist church donations. Donations received by the Church were disbursed to fund various Methodist church programs, including the clergymen's pension fund. The Church's monthly balance in these accounts varied greatly, fluctuating between $20,000 and $300,000. Annually, $200,000 to $500,000 flowed through the Church's accounts.

Defendant Larry Dover was hired in 1969 as the Church's treasurer. Dover's duties included bookkeeping, payment of bills and a general responsibility for the Church's financial accounting. At the time Dover became the Church's treasurer, he was employed as a loan officer by Midland National Bank. Dover had worked for Midland since 1955. Dover later moved to Missoula and became employed by First Bank Southside. Dover kept the Church funds invested at First Bank Southside. In 1970 and 1971, Dover's annual income was between $10,000 and $11,000.

2

In 1971, Dover invested with D. A. Davidson $20,000 of the Church's funds. Dover testified that he wanted to become a "hero" by investing the Church's money in stocks and securities and thereby increasing the Church's pension funds. Later, Dover opened a $20,000 account under the name of "CB Radio Club of America."

From 1972 to 1975, defendant Warren Drew was D. A. Davidson's account representative. Drew never requested Church authorization from Dover to invest Church funds. Drew encouraged Dover to invest in "speculative stocks." In 1974, 50 percent of the Church's portfolio was invested in speculative stock. In 1977, Dover personally loaned Drew $10,000 that Dover had wrongfully taken from the Church.

In July 1976, defendant Richard Hughes became D. A. Davidson's account representative. Hughes maintained the Church's high investment ratio of speculative stock. In 1976 Dover invested $40,000 into a Missoula subdivision project located on Grant Creek. Additionally, Dover opened an account with D. A. Davidson for each of his three children. His children's investment of Church funds totaled approximately $30,000.

In 1974, Dover requested the Council of Finance and Administration (COFA) to pass resolution granting Dover authority to "sell some stocks." Reverend Hugh Herbert, Chairman of COFA, signed approximately twenty stock authorization forms. In January 1978, Dover contacted Reverend Hugh Herbert and again requested that Herbert, as chairman of COFA, give approval authorizing Dover to invest Church funds in stocks and securities. Reverend Herbert granted Dover's request and Dover invested additional Church funds.

From 1971 to 1978, the Church employed the accounting firm of Galusha, Higgins, and Galusha to annually review the Church's finances. Following the audit, the Galusha firm

3

customarily presented its findings to Dover. Dover passed the audit information on to COFA. Dover did not present the audit itself, but rather gave general information concerning the Church's financial condition. In June 1978, Dover failed to present an audit statement to COFA at the annual meeting. Dover assured Reverend Herbert and Bishop Wheatley, and the members of COFA that the audit statement would be forthcoming. Dover also spoke with Reverend Herbert on numerous occasions during 1978. Dover told Herbert the Church was experiencing financial difficulties but assured Herbert by year's end, "[T]his would all be straightened out."

In December 1978, Dover contacted Herbert and stated the Church was facing serious financial problems "due to the poor stock market." Herbert then contacted Bishop Wheatley and, the new chairman of COFA, Reverend Wilbur Whanger on or about December 15, 1978. Herbert notified them of Dover's improprieties and the resulting financial problems. In January 1979, COFA met to discuss the Church's financial problems. At that time, Dover told COFA that he had both invested and wrongfully taken Church funds. Additionally, Dover told COFA that many of the Church's investments had failed. As a result of the January 1979 COFA meeting, Dover was terminated as the Church's treasurer. Dover later pleaded guilty to felony theft, § 45-6-301(1)(a), MCA.

Appellant Church claims that D. A. Davidson, and agents Drew and Hughes acted negligently and fraudulently in handling the Church's investments. The Church contends that respondents: (1) failed to require proper authorization to invest Church funds; (2) invested a large proportion of Church funds into volatile and speculative stocks in violation of recognized investment procedures; and (3) frequently changed or "churned" the Church's investments to increase brokerage fees. As a result, the Church lost in excess of

4

$109,000 in stock market investments and in excess of $62,000 in brokerage fees.

Appellant Church filed its original complaint on January 12, 1982, for negligence, a tort which is governed by statute of limitations set forth in § 27-2-204(1), MCA. The District Court found, in its April 29, 1986, amended order:

> [T]hat plaintiff [Church] knew in 1979 that Dover had been taking funds and the last conversion had occurred on December 7, 1977. In December 1978, plaintiff knew that some of the money entrusted to Dover had been converted according to the loss report received by plaintiff's insurance carrier and admitted into evidence at trial.

The court's April 18, 1986, opinion and order dismissed the Church's complaint against all defendants.

Appellant Church, two weeks prior to trial and more than four years after filing the original complaint, filed a pretrial order by which the Church proposed to amend its complaint. The Church generally alleged securities fraud claiming D. A. Davidson and its agents Drew and Hughes violated the following laws and rules:

1) Securities Act of Montana;

2) Securities and Exchange Act of 1934;

3) Securities Act of 1933;

4) National Association of Securities Dealers Rule of Fair Practice;

5) Rule of the Board of Governors of the Pacific Stock Exchange, Inc.;

6) Midwest Stock Exchange Rules;

7) Montana Uniform Management of Institutional Funds Act; and

8) Montana Consumer Protection Act.

The court held that the Church, by including these claims of statutory violation, was "[S]eeking to amend its original action, expanding the previous negligence action into an action for securities fraud, one couched in the broadest terms."

ISSUE I

Did the court abuse its discretion when it denied appellant's pretrial motion to amend the pleadings?

The standard of review employed by this Court when reviewing a District Court's denial of a motion to amend the pleadings is whether the District Court abused its discretion. Betor v. Chevalier (1948), 121 Mont. 337, 193 P.2d 374, 378.

Rule 15(a), M.R.Civ.P., provides, "[A] party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires . . . ."

In Prentice Lumber Co. v. Hukill (1972), 161 Mont. 8, 17, 504 P.2d 277, 282, citing Foman v. Davis (1962), 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222, 226, we held it is error, in the absence of any declared or apparent reason, for a District Court to deny leave to amend the complaint.

> . . . In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.--the leave sought should, as the rules require, be "freely given." . . . [Emphasis added.]

Prentice Lumber, 161 Mont. at 17, 504 P.2d at 282.

In the case at bar, plaintiff Church, two weeks prior to trial and more than four years after filing the original complaint attempted to amend the pleadings. The Church sought to introduce a securities fraud cause of action in addition to its negligence claim. The District Court found that plaintiff was attempting to introduce a wholly different cause of action. Secondly, the court found plaintiff was attempting to extend the three-year statute of limitations, § 27-2-204(1), MCA, by amending its complaint to include securities fraud. Finally, the court found the Church's accounting audit and evidence gathered through discovery served to place the Church on notice of its cause of action.

In McGwire v. Nelson (1973), 162 Mont. 37, 42, 508 P.2d 558, 560, we held it was an abuse of discretion to grant an amendment to the pleadings on the eve of trial, when the amendment constituted a different cause of action. The Church's amended complaint, offered after four years of discovery and two weeks prior to trial, was properly denied by the District Court. The evidence also supports the District Court's finding that defendants would be unduly prejudiced by allowing the amended complaint. Therefore, in accord with McGwire and Prentice Lumber Co. v. Hukill (1972), 161 Mont. 8, 17, 504 P.2d 277, 282, the court properly denied defendant's motion for an amended complaint.

ISSUE II

Did the District Court err when it held § 27-2-204(1), MCA, barred the Church's complaint?

Section 27-2-204(1), MCA, provides: "The period described for commencement of an action upon liability not founded upon an instrument in writing is within three years." This Court has generally held that in non-malpractice tort actions, the statute of limitations begins to run on the date

7

of the plaintiff's injury. Kerrigan v. O'Mera (1924), 71 Mont. 1, 7, 227 P. 819, 821.

"[T]he fact that a party with a cause of action has no knowledge of his rights, or even the facts out of which the cause arises, does not delay the running of the statute of limitations until [the party] discovers the facts or learns of his rights under those facts." Bennett v. Dow Chemical (Mont. 1986), 713 P.2d 992, 994, 43 St.Rep. 221, citing Carlson v. Ray Geophysical Division (1971), 156 Mont. 450, 454, 481 P.2d 327, 329.

However, when defendant's "fraudulent concealment" prevents a plaintiff from discovering a cause of action, the statute of limitations is generally tolled. Much v. Sturm Ruger and Co., Inc. (D. Mont. 1980), 502 F.Supp. 743, 745. In a non-malpractice negligence action, there must be an affirmative act committed by the defendant, and the affirmative act must be calculated to obscure the existence of a cause of action. Much, 502 F.Supp. at 745.

A review of the record reveals that on December 9, 1978, defendant Larry Dover contacted Reverend Herbert and Bishop Wheatley and informed them of his tortious acts and resulting financial problems. Herbert testified he was aware of Dover's improprieties in January 1978. The Church arguably had notice years earlier when Dover in 1974 requested and received COFA's authorization for his stock transactions.

The District Court found that the Church had notice of Dover's wrongdoing on December 15, 1978. However, the Church failed to file a complaint until January 12, 1982. The Church argues that although it was aware of defendant Dover's wrongdoing, the Church was not aware that defendant D. A. Davidson, Inc., was fraudulently "churning" stocks and negligently investing in highly speculative securities.

8

The Church was placed on notice to investigate defendant's tortious acts following defendant's meeting with Reverend Herbert and Bishop Wheatley in December 1978. The record reveals the Church failed to properly investigate its cause of action. Additionally, no evidence was presented to show that defendants fraudulently concealed the fact of injury. Much, 502 F.Supp. at 744. Plaintiff's cause of action is barred by § 27-2-204(1), MCA.

The Church also contends the District Court erred when it failed to apply equitable estoppel. Keneco v. Cantrell (1977), 174 Mont. 130, 136, 568 P.2d 1225, 1228. In order to apply equitable estoppel, the party to be estopped must have concealed facts material to another's injury. Keneco, 174 Mont. at 136, 568 P.2d at 1228.

Defendant Dover revealed his improprieties to Church officials in 1978. Defendant D. A. Davidson and its employees did not conceal their alleged improprieties. Therefore, the District Court properly denied appellant's motion to apply equitable estoppel.

ISSUE III

Did the District Court abuse its discretion when it failed to specifically separate findings of fact and conclusions of law?

Rule 52(a), M.R.Civ.P., provides in pertinent part: "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law . . ."

The Church contends that the court's failure to separate its findings of facts and conclusions of law was prejudicial. Montana Power Co. v. Kravik (1980), 189 Mont. 369, 372, 616 P.2d 321, 322, provides three reasons for Rule 52(a): (1) as an aid in the trial judge's process of adjudi-

9

cation, (2) for purpose of res judicata and estoppel by judgment, and (3) as an aid to the appellate court on review.

Although the District Court did not adhere to Rule 52(a), M.R.Civ.P., appellant Church has failed to provide this Court with evidence of undue prejudice. We hold the District Court did not commit reversible error. However, we caution the District Court to comply with Rule 52(a), M.R.Civ.P.

We hold the District Court properly denied plaintiff's motion to amend the complaint and properly dismissed its suit for failure to file the action within the required time period.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____
Justices

_____
Honorable Leonard H. Langen,
District Judge, sitting in
place of former Justice
Frank B. Morrison, Jr.

10

Mr. Justice John C. Sheehy, concurring:


The essential issue in this case is whether the District Court should have permitted an amendment to the pleadings under Rule 50(a), M.R.Civ.P.

My concurrence turns essentially on the point that allowance of the amendment would have made a completely different lawsuit as it affected D. A. Davidson, and that therefore the doctrine of relation back under Rule 15 should not apply.

If the amendment had been permitted the first problem which the District Court would have to determine is whether a fiduciary relationship existed between D. A. Davidson and the church. A fiduciary relationship is not automatically established in a stockbroker-client relationship as the court in Paine, Webber, Jackson, and Curtis, Inc. v. Adams (Colo. 1986), 718 P.2d 508, 515, pointed out. Whether a stockbroker is a fiduciary to its customer depends on the attendant facts and circumstances. Thus discovery in this case would have to begin all over related to different issues of fact just on the point of whether the stockbroker in this case was a fiduciary of the church. Then, if the relationship was established in the eyes of the law, it would make no difference that Dover himself was cheating the church. The obligation of the fiduciary would run directly to the church. Thus, if the amendment had been allowed, the prejudice to D. A. Davidson is evident in that a completely different kind of lawsuit would have resulted.

In like manner, I think equitable estoppel is not available in this case. In Kenneco v. Cantrell (1977), 174 Mont. 130, 568 P.2d 1225, we approved the use of equitable estoppel to set aside a statute of limitations so as to

prevent hardship. The elements of equitable estoppel set out in that case do not apply here because the question is not the same. Equitable estoppel was used to <u>set</u> <u>aside</u> <u>an</u> <u>applicable</u> <u>statute</u> <u>of</u> <u>limitations</u>. In the case at bar, the question is simply whether the amendments should have been allowed by the District Court. If the court had allowed the amendment, there would be no question of statute of limitations because the amendment would bring the case within the statute.

I therefore concur in the opinion.

_____
                    Justice

Mr. Justice William E. Hunt, Sr.:

I concur in the foregoing special concurrence of Mr. Justice Sheehy.

_____
                    Justice