No. 95-148

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

V.K. PUTMAN, INC.,

      Plaintiff and Appellant,

v.

MICHAEL HARDIN,

      Defendant and Respondent.

FILED

NOV 14 1995

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Larry W. Moran, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Lyman H. Bennett, III, Morrow, Sedivy & Bennett,
Bozeman, Montana

    For Respondent:

        Derik Pomeroy, Bozeman, Montana

Submitted on Briefs:  August 10, 1995

Decided:  November 14, 1995

Filed:

_____
Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of this Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

In August 1990, Appellant V.K. Putman (Putman) instituted proceedings in the Eighteenth Judicial District Court, Gallatin County, seeking damages for breach of contract and failure to pay for goods and services rendered. Respondent Michael Hardin (Hardin) denied the allegations and filed a counterclaim, alleging Putman breached the contract and seeking consequential damages. A jury found that both parties breached the contract and awarded damages accordingly. Plaintiff Putman appeals and Defendant Hardin cross-appeals.

We affirm.

## ISSUES

We restate the issues as follows:

1. Did the District Court abuse its discretion by allowing the testimony of three former employees of V.K. Putman, Inc.?

2. Did the District Court abuse its discretion by granting Putman's motion to dismiss any claim for punitive damages?

3. Did the District Court abuse its discretion by refusing Hardin's offered jury instruction on mitigation of damages?

4. Did the District Court abuse its discretion by refusing to allow Hardin to amend his counterclaim at the conclusion of the evidence?

## FACTS

V.K. Putman owns V.K. Putman, Inc., a trucking company in Belgrade, Montana. Michael Hardin was an owner/operator who owned his own truck but who did not own a trailer.

In March 1989, Putman and Hardin entered into a contract by which Putman agreed to provide Hardin with a trailer and Hardin agreed to haul various commodities for Putman.

The contract stated that Putman would make every reasonable effort to maximize the volume of traffic for Hardin to transport. It also stated that Hardin was responsible for fuel taxes, licensing fees, and equipment maintenance. The contract further provided that Hardin would receive no compensation for "deadhead" runs, which are trips made from one location to another when the truck is empty.

In January 1990, Putman was informed that Hardin's wife was pregnant. Shortly thereafter, Hardin began experiencing problems at work, including longer layovers, more deadhead runs, and greater difficulty in arranging to haul the type of load he preferred.

In April 1990, Hardin began pulling a larger trailer supplied by Putman. Hardin alleged at trial that Putman offered him the trailer after they discussed the difficulties Hardin was experiencing. Hardin further alleged Putman told him he needed a bigger trailer, and Hardin agreed to drive the bigger trailer on a

3

trial basis only. For his part, Putman alleged Hardin requested the bigger trailer, and represented to Putman that he wished to buy it.

Putman drew up a lease-purchase agreement and Hardin began using the larger trailer. Putman also began paying Hardin a higher percentage of the profits, allegedly because he believed Hardin was buying the bigger trailer. However, Hardin never signed the lease-purchase agreement. Hardin's profits continued to decline, and in late May 1990, he quit working for Putman.

At trial for breach of contract, Putman presented evidence to support his claim that Hardin owed him money for tires, truck repairs, fuel taxes, and licensing fees.

Hardin presented evidence to show Putman breached the contract by failing to exert every reasonable effort to provide Hardin with as large a volume of cargo traffic as possible. Hardin alleged Putman breached the contract in order to force Hardin's pregnant wife off the health insurance plan.

In the late 1980's, the group health plan which covered V.K. Putman, Inc. suffered massive losses, due in part to the birth of an employee's premature twins, which cost the insurer approximately $50,000. The insurance company's losses resulted in higher premiums. Although the employees of V.K. Putman, Inc. paid their own premiums, a former employee of Putman testified that the insurance agent told him the company plan could not afford any more pregnancies. The insurance agent denied making such a statement.

Hardin's problems began after he informed Putman of Mrs.

4

Hardin's pregnancy. In essence, Hardin's breach of contract theory was premised on a concerted effort by Putman to keep pregnancies off the insurance plan. To support this theory, Hardin presented testimony from a former employee, Brenda Arrotta, who was fired after having a baby. He also presented corroborating testimony of another former employee, Keith Atwood, as well as testimony of a third employee, Michael Winsick, who had also been fired from V.K. Putman.

After trial, the jury found both parties had breached the contract. The jury awarded Hardin $12,471.12 for profits lost during the last four months he worked for Putman. The jury awarded Putman $5,550.23 for repairs, overpayments, tires, and various fees and taxes.

## STANDARD OF REVIEW

The parties' allegations of error involve an evidentiary ruling, the grant and denial of motions, and the denial of a proposed jury instruction. The standard of review for these three issues is whether the District Court abused its discretion. State v. Pinkerton (1995), 270 Mont. 287, 891 P.2d 532; In re Marriage of Craib (1994), 266 Mont. 483, 880 P.2d 1379; Northwest Truck & Trailer Sales, Inc. v. Dvorak (1994), 269 Mont. 150, 887 P.2d 260; Yellowstone Conference of the United Methodist Church v. D.A. Davidson, Inc. (1987), 228 Mont. 288, 741 P.2d 794.

## ISSUE 1

Did the District Court abuse its discretion by allowing the testimony of three former employees of V.K. Putman, Inc.?

Hardin's breach of contract claim was premised on the theory that Putman intentionally tried to rid the company of pregnant employees (or employees' spouses) in order to reduce health insurance premiums. In order to bolster this theory, Hardin presented evidence from Brenda Arrotta, Mike Winsick, and Mike Atwood.

Ms. Arrotta is a former employee of V.K. Putman, Inc. At trial in this case, she testified to the poor treatment she received after she informed the company she was pregnant. She testified that she was placed on mandatory maternity leave and subsequently had to drop her health insurance because she could not afford the payments.

Mike Atwood is also a former employee of V.K. Putman. He offered related testimony regarding the nature of the treatment Ms. Arrotta received and the concerns of the company regarding the increasing health insurance premiums.

Mike Winsick, the third former employee, testified that the company's insurance agent told him that the reason the insurance rates continued to rise was because of "three pregnancies that have been substantial in cost." Putman objected to the testimony of all these former employees as irrelevant.

The District Court has broad discretion to determine whether evidence is relevant and admissible. Galbreath v. Golden Sunlight Mines, Inc. (1995), 270 Mont. 19, 22, 890 P.2d 382, 384. It was not an abuse of discretion for the District Court to allow the testimony of these three witnesses.

6

ISSUE 2

Did the District Court abuse its discretion by granting Putman's motion to dismiss any claim for punitive damages?

For his cross-appeal, Hardin alleges three specific errors, the first of which is that the District Court abused its discretion by granting Putman's motion to dismiss any claim for punitive damages.

In Montana, punitive damages for breach of contract are limited by statute. Section 27-1-220(2)(a), MCA, provides "[u]nless otherwise expressly provided by statute, punitive damages may not be recovered in any action arising from: (i) contract; or (ii) breach of contract." Prior to trial, Hardin amended his counterclaim to allege breach of contract as an affirmative defense.

On appeal, Hardin now argues the evidence in this case supports a finding that Putman committed the tort of bad faith. Punitive damages are allowable in tort cases.

While the tort of bad faith may still apply in exceptional circumstances, in the vast majority of contract cases, only contract damages are due. Daniels v. Dean (1991), 253 Mont. 465, 473, 833 P.2d 1078, 1083 (citing Story v. Bozeman (1990), 242 Mont. 436, 791 P.2d 767). Most of the common applications of this tort have been codified; in the remainder of cases, a party must show that a "special relationship" exists, beyond that of contracting parties. Daniels, 833 P.2d at 1083. Such a special relationship does not exist in this case. Further, Hardin did not allege the

tort of bad faith in the pleadings nor present substantive evidence regarding it at trial. Instead, he specifically and voluntarily limited his counterclaim to breach of contract.

We hold that the District Court did not abuse its discretion by dismissing the claims for punitive damages.

## ISSUE 3

Did the District Court abuse its discretion by refusing Hardin's offered jury instruction on mitigation of damages?

Hardin next alleges the District Court abused its discretion by refusing to allow his offered jury instruction on mitigation. He argues that, had he been able to instruct on his own duty to mitigate his damages, the jury would have awarded him additional damages.

The duty to mitigate damages encompasses a party's duty to lessen the amount of damage he or she suffers, if such lessening or mitigation is possible. This Court is not persuaded by Hardin's theory that the District Court's failure to instruct the jury on his own duty to mitigate was somehow prejudicial to his case. Because he was the plaintiff on his counterclaim, any error arising from the failure to instruct on mitigation would work to his advantage.

At trial, all proffered testimony on damages was allowed, after which the jury set the award. No testimony or evidence on the subject of damages was refused. "It is not reversible error for a trial court to refuse to give an offered instruction unless such refusal affects the substantial rights of the party proposing

8

the instruction, thereby prejudicing him." King v. Zimmerman (1994), 266 Mont. 54, 64, 878 P.2d 895, 902. See also Chambers through Chambers v. Pierson (1994), 266 Mont. 436, 880 P.2d 1350.

The District Court's refusal to instruct on mitigation was not an abuse of discretion.

## ISSUE 4

Did the District Court abuse its discretion in refusing to allow Hardin to amend his counterclaim at the conclusion of the evidence?

Hardin lastly alleges the District Court abused its discretion by refusing to allow him to amend his counterclaim at the conclusion of the evidence to allow a claim for fraud. Hardin points out that Rule 15(b), M.R.Civ.P., states that a court may allow the pleadings to be amended and that permission to do so shall be freely granted when justice so requires. This Rule, however, does not grant a party free rein to amend the pleadings at any time for any reason.

In this case, Hardin amended his answer and counterclaim twice. In his second amended answer, Hardin eliminated fraud as a claimed affirmative defense. Further, Hardin moved the court in limine to bar any testimony regarding fraud at trial, stating that:

> none of these issues [including fraud] are relevant to the contentions defendant will be attempting to prove at the trial . . . raising these issues could only serve to confuse the jury. [Hardin] is not attempting to prove any of these issues at trial, and no jury instructions will be provided on any of these issues.

While leave to amend the pleadings should be freely given, a repeated failure to cure deficiencies by amendments previously

9

allowed may be reason enough to deny a motion to amend. Yellowstone Conference of the United Methodist Church, 741 P.2d at 797. Hardin amended his answer and counterclaim twice without raising fraud as a claim. Further, Hardin unequivocally dropped any fraud claim by his motion in limine, which the court granted. It was not an abuse of discretion for the District Court to refuse to allow Hardin to amend his pleading again.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

10