No. 12216

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

DOUGLAS R. McGUIRE,

Plaintiff and Respondent,

-vs-

HOWARD NELSON, d/b/a
HARMONY HOUSE,

Defendant and Appellant.

Appeal from: District Court of the Eighteenth Judicial District,
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellant:

Bennett and Bennett, Bozeman, Montana
Lyman H. Bennett III argued, and Lyman Bennett, Jr.
 appeared, Bozeman, Montana
Bolinger and Wellcome, Bozeman, Montana
Page Wellcome appeared, Bozeman, Montana

For Respondent:

Berger, Anderson, Sinclair and Murphy, Billings,
 Montana
Richard Anderson argued, Billings, Montana

Submitted: January 24, 1973

Decided:MAR 29 1973

Filed:MAR 29 1973

_____
                           Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from judgment entered on a jury verdict in the district court of the eighteenth judicial district, county of Gallatin. The jury returned a verdict in the amount of $45,000 in favor of plaintiff. After denial of defendant's motion for a new trial, defendant appealed the final judgment and order denying a new trial.

Plaintiff brought the action to recover damages for personal injuries sustained in a motorcycle accident which occurred on July 5, 1970. Defendant Howard Nelson, d/b/a Harmony House, is an authorized Honda dealer.

Plaintiff purchased a used 1966 Honda Trail 90 motorcycle from a friend in April 1970. The front tire of the Honda was badly worn so plaintiff desired to replace it. Since plaintiff was working full time during the day and as a musician at night, he sent his girl friend, now his wife, Sherrie Johnson McGuire, to Harmony House to purchase the new tire. He instructed her to ask for a tire for a "1966 Honda Trail Bike 90". Sherrie contended she went to Harmony House and purchased a tire, although defendant and his employees denied selling her any tire. Plaintiff's witnesses placed her near the store with a tire at the time of the alleged purchase. She testified she specified a tire "for a 1966 Trail Bike Honda 90". Allegedly, an employee of Harmony then checked some catalogs, conversed with other employees, and then brought out a tire from the back room and sold it to her. She took the tire to the store where plaintiff worked and placed the tire in his car.

Plaintiff testified that a day or two later he took the tire and motorcycle to a service station to have the tire mounted. However, the owner of the service station contended plaintiff could not have had the tire mounted at his station because he had a set

- 2 -

policy not to mount motorcycle tires. Further, he did not have proper equipment to mount motorcycle tires. In any event, the tire was mounted on the Honda Trail Bike 90.

Plaintiff maintains the crux of the case lies in the difference between the proper front tire size listed in the manufacturer's specifications and the size of the tire actually mounted on the motorcycle. The size of the tire purchased by Sherrie McGuire and mounted on the motorcycle was a 2.75 x 17. The proper front tire, according to manufacturer's specifications, was a 2.50 x 17 size. The tire Sherrie purchased was the proper size for the rear wheel but at the time of the purchase she did not specify whether she wanted a front or rear tire.

The day of the accident, plaintiff and Sherrie went to an area called "the pits" near Bozeman. The motorcycle was designed as a trail bike and plaintiff intended to use it there for that purpose. Sherrie was hesitant about riding down a particular incline and plaintiff teased her by edging the bike over the hill. As the bike began to roll, it encounted a rise or bump in the terrain about 2 1/2 feet from the top of the hill. The motorcycle suddenly pitched forward throwing Sherrie to the side. Plaintiff plummeted down the hill with the bike landing on top of him. He sustained a fractured pelvis and dislocated hip. Sherrie received no serious injury and makes no claim for any. That plaintiff requires further surgery and perhaps even total hip replacement was not contested by defendant.

The exact cause of the accident was unknown to plaintiff at that time. He speculated to an ambulance driver that he may have applied the front brake. Some nine months after the accident, plaintiff was riding the same cycle, with the same equipment, over a bumpy terrain of fist-size rocks. As he drove over the rocks, he felt a momentary seizing of the front wheel. He observed that when he hit a rock the wheel would move up in the front fender housing and freeze as it hit the upper limit of travel. He told

friends with him that he had just discovered the cause of the accident. One friend tried the same thing and observed the same results.

Later, plaintiff compared his cycle with one nearly identical to his and noticed that his front tire was a 2.75 x 17, while the other cycle's front tire was a 2.50 x 17. He then took his bike to a cycle shop operator, Ron Abelin, for further checking. Abelin placed a furniture clamp on/the handlebars and the front wheel axle to compress the front shock absorber to the limit of travel. Upon doing so, the front tire would not turn.

This same demonstration was conducted at trial. When the clamp was placed on the left side the tire would turn slightly; when placed on the right side the tire would not turn at all. When the 2.75 x 17 tire was replaced with the 2.50 x 17 tire, the tire rotated freely with the clamp placed on either side. Defendant objected to the demonstration on the grounds that similarity of conditions could not be shown; that is, there was no showing the normal operation of the cycle would place the same pressure on the front fork as did the furniture clamp. The demonstration was performed; defendant was allowed a continuing objection.

Just prior to trial on December 10, 1971, plaintiff moved to amend his complaint to encompass a theory of implied warranty of fitness, as provided in section 87A-2-315, R.C.M. 1947. Hearing on the motion to amend was held the day of trial, December 14, 1971. Defendant maintained the motion was not timely in that it changed the theory of the law on the case for which defendant had no time to prepare. Plaintiff contended the amendment merely explained and clarified the complaint. The court granted the motion to amend, denied defendant's motion for continuance, and ordered the trial to begin.

Defendant presents seven issues for review on appeal, but we will discuss only those issues determinative of this case.

- 4 -

While warranties of fitness for a particular purpose, as expressed in section 87A-2-315, R.C.M. 1947, are not novel before this Court, this case presents the first instance in which we need consider the substantive problems raised under the statute. We will first consider whether the motion to amend should have been granted.

We cannot agree that plaintiff's amendment merely clarified the original complaint. The original complaint was clearly based on the alleged negligence of defendant. The pretrial order was no different. This remained the theory of the case until very shortly before the trial. In fact, as heretofore noted, the motion to amend was not granted until the very day of trial. If the complaint and pretrial order so clearly stated a theory of implied warranty of fitness, as plaintiff contends, why was it not expressly stated? Obviously, it was not contemplated until shortly before the motion to amend was filed.

It was error for the trial court to grant plaintiff's motion to amend the complaint to include the theory of implied warranty of fitness. Although Rule 15(a), M.R.Civ.P., establishes that leave to amend shall be freely granted, amendments should not be allowed where the theory presented by the amendment is totally inapplicable to the case, as is the situation here.

Negligence, either on the part of defendant or plaintiff, has no place in an action for an alleged breach of warranty. Similarly, warranty theories are irrelevant to a negligence case. In Picker X-Ray Corp. v. General Motors Corp., 185 A.2d 919,922, the Municipal Court of Appeals for the District of Columbia, said:

> "There seems to be some confusion in understanding the nature of implied warranty liability. In the first place, concepts of negligence and fault, as defined by negligence standards, have no place in warranty recovery cases. Proof of negligence is unnecessary to liability for breach of implied warranty and the lack of it is immaterial to defense thereof. Since the warranty is implied, either in fact or in

law, no express representations or agreements by
the manufacturer [or retailer, as the case may be]
are needed. Implied warranty recovery is based
on two factors: (a) The product or article in
question has been transferred from the manufacturer's
[retailer's] possession while in a 'defective' state,
more specifically, the product fails either to be
'reasonably fit for the particular purpose intended'
or of 'merchantable quality,' as these two terms,
separate but often overlapping, are defined by the
law; and (b) as a result of being 'defective,' the
product causes personal injury or property damage."
[Paraphrased material added].

See also: 2 Frummer & Friedman, Products Liability, § 16.01 [1];

3 Bender's U.C.C. Service, Duesenberg & King, Sales and Bulk

Transfers § 7.01[4].

As a result of the amendment, defendant had to be prepared

for an entirely different defense theory. The prejudicial nature

of the amendment becomes more apparent when viewed in light of

the instructions given. The issues became so confused that both

theories were combined into a single instruction. The question

should not have been whether there was a breach of an implied

warranty or fitness for a particular purpose, but rather, whether

the defendant was negligent.

The court's Instruction No. 6, relating to the two theories

upon which plaintiff predicated his case, failed to properly dis-

tinguish the theories. The instruction stated only that contri-

butory negligence was no defense to a breach of warranty. It

did not indicate to the jury that any negligence on the defendant's

part was totally inapposite to recovery under the warranty theory.

This, when coupled with court's Instruction No. 8, must necessarily

have left the jury completely in doubt as to any distinctions

between the theories. Instruction No. 8 speaks in terms of

reliance on the seller's skill in selecting the merchandise, a

warranty element, but concludes that the resultant improper selec-

tion of merchandise by failure to exercise reasonable care is

negligence. This Court in Brothers v. Surplus Tractor Parts Corp.,

_____Mont._____, _____P.2d_____, 30 St.Rep. 265,268, ruled that

confusing instructions concerning the theories of negligence and implied warranty were grounds for reversal.

Plaintiff is not restricted from pleading in the alternative. But where, as here, it becomes readily apparant that any warranty theory is foreign to the proper pleading of the case, any combination of the two theories cannot be tolerated. The inapplicability of the warranty theory becomes especially obvious when inartfully drawn instructions are merely a conglomeration of the two theories.

What plaintiff actually suggests is not that the tire itself was defective, but the sale of the tire to the plaintiff's agent was defective. But, such suggestion only further confuses the issue. To say the sale was defective necessarily implies the sale was negligent. We find little support for the theory that an allegedly negligent act is a defect. All cases facing the issues properly indicate that the defect must be in the product itself. A quick sampling of recent cases is helpful: Van Winkle v. Firestone Tire and Rubber Co., 117 Ill.App.2d 324, 253 N.E.2d 588, an allegedly defective tire; Peters v. Lyons, (Mich. 1969), 168 N.W.2d 759, an allegedly defective dog chain; Kirk v. Stineway Drug Store Com., 38 Ill.App.2d 327, 187 N.E.2d 307, an allegedly defective stepladder; Utley v. Standard Magnesium & Chemical Co., (Okl. 1970), 478 P.2d 953, an allegedly defective metal ladder; Continental Cas. Co. of Ill. v. Westinghouse Elec. Corp., (D.C.Mich. 1970), 327 F.Supp. 720, an allegedly defective spot weld on a heating-air conditioning unit; Paullus v. Liedkie, 92 Idaho 323, 442 P.2d 733, allegedly defective breeder hogs because of disease; DeLamar Motor Co. v. White, 249 Ark. 708, 460 S.W.2d 802, an allegedly defective truck; Waddell v. American Breeders Service, Inc., _____Mont._____, 505 P.2d 417, 30 St.Rep. 91, allegedly defective bull semen.

Plaintiff cites Lewis v. Mobil Oil Corp., (8th Cir. 1971), 438 F.2d 500, in support of his theory. It is difficult to reconcile Lewis with the cases noted above. Although the case is somewhat distinguishable, the distinction between negligence and warranty was overlooked. The court in Lewis held, in effect, that

the improper selection of hydraulic system oil breached an implied warranty of fitness. However, in that case, the plaintiff initially requested that he be supplied with the proper oil for his system, and continually reiterated his concern that the oil be the proper one. Mobil Oil consistently supplied an improper oil until nearly two years after the oil was first furnished. Here, on the other hand, defendant did supply plaintiff with a proper tire "for a 1966 Trail Bike Honda 90", the tire was, in fact, a correct tire size for the rear wheel of the cycle; plaintiff's agent had not specified which wheel.

In Van Winkle v. Firestone Tire and Rubber Co., 117 Ill. App.2d 324, 253 N.E.2d 588, 590, the Appellate Court of Illinois had this to say concerning the plaintiff's burden:

> "The plaintiff must * * * show affirmatively that there was some defect in the article sold which rendered it unfit for that purpose and that damage resulted from such defect."

In support of this rule, the Illinois court cited Kirk v. Stineway Drug Store Com., which case related to a defective stepladder for failure to install a safety cleat; and Knab v. Alden's Irving Park, Inc., 49 Ill.App.2d 371, 199 N.E.2d 815, relating to a pair of trousers defective because of the highly inflammable nature of the material. We are in accord with the Illinois court.

Here, defendant warranted that the tire he allegedly sold plaintiff's agent was free of defects affecting the particular purpose for its intended use. The tire was without question a perfectly good 2.75 x 17 tire that did not fail, as the term is ordinarily used, in its normal operation. Plaintiff is not precluded from alleging that the selection of the tire was improper. Such allegation, however, could only be presented to the jury on a negligence theory. Since we find a warranty of fitness inapplicable, defendant's contention concerning failure to receive timely notice of the defect need not be considered.

While other isses raised by defendant are not pertinent to the grounds for reversal, they would, no doubt, be raised

again on retrial; therefore we shall determine them. Defendant objected at trial to the introduction of the furniture clamp demonstration. He claims error on the basis that no similarity of conditions was shown between the amount of force applied by the clamp and the pressure actually exerted by two persons riding the cycle. We agree. The trial court erred in allowing the demonstration without proper foundation.

This Court has consistently held that substantial similarity of conditions must be shown before experiments or demonstrations can be introduced. Bernhard v. Lincoln County, 150 Mont. 557, 561, 437 P.2d 377; Hurly v. Star Transfer Company, 141 Mont. 176, 181, 376 P.2d 504; Richardson v. Farmers Union Oil Co., 131 Mont. 535, 548, 312 P.2d 134. The persuasive effect of this courtroom demonstration cannot be denied. Without a showing that the clamp pressure was not significantly greater than the pressure of two riders, the demonstration should not have been admitted. Otherwise, the jury is strongly influenced to speculate that the result shown in the demonstration was, in fact, the cause of the accident. Plaintiff's witness Abelin admitted he did not know whether the pressure applied was similar.

The cause is reversed and remanded for a new trial.

_____
Associate Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Associate Justices.