No. 89-08

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

PHIL-CO FEEDS, INC.,
a Montana corporation,

Plaintiff and Respondent,

-vs-

FIRST NATIONAL BANK IN HAVRE,
a National Banking corp.,

Defendant and Appellant.

APPEAL FROM: District Court of the Twelfth Judicial District,
In and for the County of Hill,
The Honorable Chan Ettien, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Theodore K. Thompson; Thompson & Swenson, Havre,
Montana

For Respondent:

Laura Christofferson; Gallagher, Archambeault and
Knierim, Wolf Point, Montana

Submitted on Briefs: May 18, 1989

Decided: August 15, 1989

Filed:

_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

The First National Bank in Havre appeals from a judgment rendered against it after jury verdict in the District Court of the Twelfth Judicial District, Hill County. The verdict was for the principal sum of $44,787.91, and judgment was entered by the District Court in favor of Phil-Co Feeds, Inc. on September 12, 1988, for the sum of $63,219.75 which includes prejudgment interest.

We affirm the judgment of the District Court.

We will state the facts generally from the viewpoint of the plaintiff and additional facts as may be necessary for the discussion of each issue.

Phil-Co Feeds, Inc. (Phil-Co) is a Montana corporation located in Malta, Montana, engaged in the business of selling grain and feed supplement, and other animal health care products for use in animal feeding and feedlot operations.

Raymond J. Shape, with his wife, Mary Jane Shape, insofar as pertinent here, fed livestock in feedlots located on Shape's ranches at Harlem and Roy, Montana. Shape financed his feedlot operations through First National Bank of Havre by means of various loans for the feedlot operations. It appears that First National was the sole provider of operating funds for Shape.

In September of 1981, Shape approached Vic Lefdahl, manager of Phil-Co about the purchase of feed for the feedlot operations at Harlem and Roy. An agreement was made between Phil-Co and Shape at that time that Shape would be allowed to charge feed on a monthly basis and then Shape would be billed by Phil-Co on the first of each successive month and that all statements would be paid in full by Shape by the tenth of

each month. Shape advised Phil-Co that all his financing was being handled by First National Bank.

In November of 1981, Phil-Co sent Shape the October bill which required payment through the first few days of November. Shape paid the bill but later complained that he had been required by Phil-Co to pay for feed bills that were not yet due, that is, for the days in November. Shape asked that he be refunded the monies that he had paid beyond his October bill and Phil-Co complied. The feed bills from Phil-Co to Shape were averaging $2,000 per day, or $60,000 per month. It was the opinion of Vic Lefdahl that Shape "over-reacted" about the amount of the bill related to the November charges. Lefdahl decided to inquire with First National Bank about Shape's financial ability to handle the feed bills.

On November 19, 1981, Lefdahl telephoned Randy Smith, an officer of First National Bank, and inquired as to Shape's financial ability to pay for the feed that was being furnished to Shape. Randy Smith advised Lefdahl that Shape could handle the feed bills under his credit line with First National Bank and also that Phil-Co had no reason for concern about the amount of the feed bill, because Phil-Co would be paid first out of the proceeds of the sale of the livestock even before the Bank, saying that Phil-Co had an "automatic first lien" for payment of the feed bill on the cattle being fed.

On December 11, 1981, Shape delivered a post-dated check to Phil-Co for payment on the November feed bill in the sum of $40,000. The actual balance due was $53,447.74. The post-dated check bore the date of December 16, 1981. Lefdahl called Randy Smith at the Bank to determine whether the check was good and whether it would be honored by the Bank. Randy Smith told Lefdahl that Shape was in "tough shape," that the

check would not be honored, and that Lefdahl should get out of his deal with Shape as quickly as possible.

I.

Should the District Court have Dismissed the Complaint and the Amended Complaint on the Grounds of Res Judicata?

In March of 1982, Shape filed a petition for protection in the United States Bankruptcy Court, Great Falls Division. In the bankruptcy action Phil-Co filed a complaint in the Bankruptcy Court against First National Bank. The Bank in that action filed a motion to dismiss Phil-Co's complaint and eventually the Bankruptcy Judge, Honorable Orville Gray, issued his order granting Bank's motion to dismiss.

Phil-Co appealed Judge Gray's decision to the United States District Court, Great Falls Division. On May 11, 1983, the U.S. District Court Judge, Honorable Paul Hatfield affirmed the decision of Judge Orville Gray.

The Bank contends on appeal here that the decision in the Bankruptcy Court is res judicata as to the issues raised in the present cause before this Court. However, Phil-Co contends that res judicata does not apply because the action in Bankruptcy Court was only for the purpose of determining the priority of right to proceeds left in bankruptcy estate as between the Bank and Phil-Co. Phil-Co contends that the Bankruptcy Court decided only the issue of equitable subordination, and that under 11 U.S.C., Section 349, the effect of the dismissal in the Bankruptcy Court was to restore in effect all parties to the status quo before the bankruptcy petition was filed.

Judge Orville Gray's order granting the motion to dismiss was on these grounds:

> 1. That the motion to dismiss filed by defendants be and the same is hereby granted.

- 4 -

2. That for clarification, the court also ruled that even if plaintiff should plead the alleged statements of Mr. Randy Smith, the court would still rule that such statements are not a legal basis for recovery under the principle of equitable subordination.

Judge Hatfield's order on appeal to the Bankruptcy Court indicated that "the order of the Bankruptcy Judge dismissing the plaintiff's claim for equitable subordination under 11 U.S.C. Section 510(c) be accepted in whole by this Court."

As counsel for First Bank correctly points out, res judicata applies when the following criteria are met:

(1) The parties or their privies are the same;

(2) The subject matter of the action is the same;

(3) The issues related to the subject matter are the same; and

(4) The capacities of the person are the same in reference to the subject matter and the issues between them.

See Fox v. 7L Bar Ranch Company (1982), 198 Mont 201, 206, 645 P.2d 929, 931; Federal Land Bank of Spokane v. Heidema (Mont. 1986), 727 P.2d 1336, 1337; Phelan v. Lee Blaine Enterprises (1986), 220 Mont. 296, 299, 716 P.2d 601, 603.

On June 22, 1983, the Bankruptcy Court dismissed Shape's bankruptcy proceedings under Chapter 11 with prejudice upon the grounds that no plan had been filed, that no assets remained in the estate, that the costs of administration exceeded the assets and there was no chance of reorganization under Chapter 11. The dismissal was with prejudice, including all adversary matters pending in relation to the Chapter 11 proceedings.

Phil-Co's complaint and amended complaint in the state court set forth theories of liability based on

misrepresentation, equitable estoppel, fraud and bad faith. The issues in the Bankruptcy Court were related to the narrow issue of equitable subordination between competing interests of two creditors of the alleged bankrupt. Thus the claim of res judicata fails with respect to two of the criteria set forth above: the subject matter of the actions are not the same, and the issues relating to them are not the same. We hold therefore the res judicata does not apply in this action based upon the proceedings taken in the Bankruptcy Court, and the appeal to the Federal District Court.

Phil-Co further contends on this issue that under the 11 U.S.C., Section 349, the dismissal with prejudice of the bankruptcy proceedings restores all parties involved in the bankruptcy to status quo. That may well be the effect of the federal statute, but in light of our holding as to res judicata it is not necessary for us to reach any conclusion with respect to the federal statute at this point.

II.

Was First National Bank Prejudiced by the Filing of an Amended Complaint by the Plaintiff Three Weeks Prior to Trial?

Trial of this cause in District Court had been set for August 9, 1988, when, on July 15, 1988, Phil-Co moved the District Court for permission to amend its complaint. Phil-Co stated that it had "learned of additional facts through the discovery process and justice requires that the amendment be allowed." First National Bank argues that Phil-Co could not have discovered any additional information from discovery that it did not have prior to the original complaint and that the amended complaint dramatically changed factual pleading and theories. One of its reasons was that the complaint had been filed four and one half years earlier. First National points to United Methodist Church v. D. A.

- 6 -

Davidson (Mont. 1987), 741 P.2d 794, 797, and McGuire v. Nelson (1973), 162 Mont. 37, 42, 508 P.2d 558, 560, for cases finding an abuse of discretion when the district court grants an amendment to pleading on the eve of trial.

First National contends that the original complaint alleged theories amounting to bad faith, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and fraud. It contends that the amended complaint changed the theories to equitable estoppel, fraud, and bad faith. Prior to settling instructions, the District Court on its own motion dismissed plaintiff's claims of equitable estoppel, fraud, bad faith, and punitive damages. The court permitted the case to go forward to the jury on theories of constructive fraud and negligent misrepresentation. First National now contends that the Court injected theories into the case which were not pleaded.

The general concept of the Montana Rules of Civil Procedure is to allow a party to obtain such relief as he or she may be entitled to under the testimony and proof. Thus Rule 8(a) allows the plaintiff to set forth a short and plain statement of his claim showing that he is entitled to relief, and a demand for the judgment to which he deems himself entitled. Relief in the alternative or several different types may be demanded. Rule 8(e) is specific that when two or more statements of a claim or defense are alleged, if any one of them made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. Rule 15(a) states that amendments to pleadings may be given freely "when justice requires." In actions involving multiple claims or involving multiple parties, Rule 54(b) permits the court to revise at any time before the entry of judgment a decision adjudicating all the claims and rights and liabilities of the

parties. Especially notable is the last sentence of Rule 54(c) which provides that except in cases of judgment by default, "every final judgment shall grant the relief to which a party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

In this case, the action of the District Judge in limiting through instructions the theories of recovery to constructive fraud and negligent misrepresentation had the effect of removing much of the Bank's claimed prejudice through the allowance of the amended complaint. The facts upon which the theories of constructive fraud, negligence and misrepresentation are based were quite well known to the plaintiff and at all times to the court during the litigation, so that First National is unable to demonstrate any prejudice that resulted from the permitted amendments.

We therefore hold against First National on this issue.

III.

Did the Statute of Frauds Require a Dismissal of the complaint in this case?

First National Bank contends that since Phil-Co alleged both in its complaint and amended complaint that the Bank had failed to honor the check which paid Shape's debt to Phil-Co that pursuant to § 28-2-903, MCA, the cause should have been dismissed.

Section 28-2-903(1)(b), MCA, provides:

The following agreements are invalid unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged or his agent:

(b) A special promise to answer for a debt, default, or miscarriage of another . . .

First National then points to several instances in the testimony when one or another of the witnesses stated that

- 8 -

the Bank had "agreed" that it would see to it that Ray Shape's bill was paid. Additionally, Phil-Co did not respond to two requests for admission which would therefore be deemed admitted:

> Request No. 21: Admit that Phil-Co Feeds, Inc., never received a written agreement from the First National Bank in Havre agreeing to pay Ray Shape's feed bill.

> Request No. 22: Admit that no representative of Phil-Co Feeds, Inc., ever requested Raymond Shape to secure an agreement with the First National Bank in Havre to pay his feed bill owed to Phil-Co Feeds, Inc.

The Statute of Frauds applies to liabilities based on contract, and not to theories of liabilities based on fraud or negligent misrepresentation.

Under the evidence here, Lefdahl called Randy Smith and requested information regarding Ray Shape's ability to pay any statement on his extremely large feed bill. Randy Smith, a banker, chose to divulge information regarding Ray Shape to Vic Lefdahl and did make certain affirmative statements indicating that Shape could pay and that it did not matter if Shape did not pay as Phil-Co had an automatic feed lien which would be paid first. Phil-Co relied on this information and extended credit to Ray Shape from November, 1981 to December 11, 1981 when Vic Lefdahl again called Randy Smith to confirm that the check to Phil-Co drawn by Ray Shape on First National Bank was good. At that time, he was advised the check would not be honored and Lefdahl took action to protect Phil-Co's interests.

The requests for admission in this case are not pertinent because they relate to written agreements, and plaintiff's case in tort is not based on a written agreement. Therefore the Statute of Frauds does not apply.

We uphold the District Court on this issue.

## IV.

Was First National Bank Prejudiced by the District Court's Refusal to Permit Certain Evidence and Testimony?

On the cross examination of Donald Cole, an attorney representing Phil-Co at the time Shape was doing business with him, and who is also representing one of its officers and directors, Lee Robinson, the Bank attempted to elicit testimony from Cole regarding his representation of Lee Robinson. When objection was sustained, the Bank made an offer of proof which would have shown that Cole had represented Lee Robinson with respect to a claim against Shape for the purchase by Shape from Robinson of a certain Versatile Tractor. Because of his trouble in collecting the debt from Shape, Bank wanted to establish that Lee Robinson knew prior to the time that Phil-Co became involved with Shape that Shape did not pay his debts as they became due. Bank contends that this would have shown that Robinson, as a director of Phil-Co, knew or should have known before Phil-Co began giving credit to Shape that he was a poor credit risk. The court denied the offer of proof upon the ground that any knowledge that Lee Robinson might have had as to the credit record of Shape could not be imputed to the corporation in this case. Plainly the District Court was correct.

Bank further raises the issue of the refusal by the District Court to admit the deposition of Sid Boe as evidence in the cause. Bank asserts that the testimony of Sid Boe would have demonstrated that Phil-Co had knowledge that the Bank was not providing operating credit or monies to pay for feed to Ray Shape. This information, however, would be irrelevant to the present action. Under the testimony here, Lefdahl called the Bank and was assured that even if Shape did not receive money from the Bank for feed that

nevertheless Phil-Co had an "automatic feed lien," and would be paid before the Bank. Evidence in the cause indicated that there was no such automatic feed lien. The District Court correctly refused this testimony.

The District Court also refused as irrelevant the admission of two security agreements offered by the Bank. The evidence indicated that the agreements were signed in January of 1982, but were back dated to December 8, 1981 and were security agreements which related to arrangements made through the owner of the cattle for payment for the feed after December 11, 1981, when the Bank informed Phil-Co that it would not honor Shape's last check for $40,000.

Unless the offered evidence naturally and logically tends to establish a fact in issue, it is not admissible. Britton v. Farmers Insurance Group (Mont. 1986), 721 P.2d 303. The test of relevancy is whether an item of evidence will have any value, as determined by logic and experience in proving the proposition for which it is offered. McConnell-Cherewick v. Cherewick (1983), 205 Mont. 75, 666 P.2d 742. The evidence in this case, offered by the defendant and refused by the District Court, had no relation to the representations made by the bank's officer, upon which Phil-Co relied. We find no error on these issues.

V.

Did the District Court Prejudice First National Bank by Requiring it to Produce Randy Smith for Examination at Trial?

In the course of the trial before the District Court, counsel for Phil-Co announced that the plaintiff would rest. Immediately thereafter, a colloquy between court and counsel for the Bank ensued as follows:

MR. KNIERIM: We will rest.

MR. THOMPSON: I know the jury has been like a jumping jack back and forth, but now we are going

- 11 -

to put our case on, I wonder if I can have a ten minute break. I anticipated that they would have more witnesses than what they did, and I would like to have about a ten minute recess.

THE COURT: I understand that Mr. Smith is present in the court.

MR. THOMPSON: No, he is not.

THE COURT: In the courthouse?

MR. THOMPSON: No. he is not.

THE COURT: He is here in Havre.

MR. THOMPSON: I would be able to have Mr. Smith available for testimony in a few minutes.

THE COURT: I think in the interest of judicial economy, you better have him in here subject to examination by the plaintiff as a possible witness.

MR. THOMPSON: Your Honor, we will call him in our case.

THE COURT: The court has ordered him called now, Mr. Thompson, and I want to get this case settled out so that there is some understanding by the jury of what is going on. And I want you--we will have a recess. You get a hold of Mr. Smith and get him up here so he can be examined by the plaintiff.

MR. THOMPSON: Okay. Perhaps we can have a recess for ten or fifteen minutes.

THE COURT: Fine. We are in recess for 15 minutes.

WHEREUPON, the court took its recess at 2:05 p.m.

Randy Smith appeared in court at 2:20 p.m., and the trial resumed, with Randy Smith being examined by the plaintiff as an adverse witness as part of the plaintiff's case in chief.

Counsel for the Bank now contend that the record does not show the "volcanic anger" of the District Judge at the

- 12 -

time and his demeanor in the course of the discussion. Bank contends that the jury may have been prejudiced by the court in directing the production of Randy Smith for examination. Immediately before the colloquy above reported, there was a conference before the bench, off the record. Because the conference off the record is not reported, this Court can not indulge in speculation as to what the District Court learned at that time.

Insofar as the contention of the Bank is now raised, no objection was made by Bank's counsel at the time of the action by the judge nor was there any motion for mistrial. Therefore there was no preservation of any issue of judicial misconduct for appeal. Evangeline v. Billings Cycle Center (Mont. 1981), 626 P.2d 841. We do not find error on this point.

## VI.

### Conclusion

The foregoing are the issues raised by the appellant in this cause, and our disposition of the same. Because we find no error on the part of the District Court on the issues raised, we affirm the judgment.

_____
John C. Sheehy
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

- 13 -