No. 97-684

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 333

RAYMOND G. ANDERSON,

Plaintiff and Respondent,

v.

WERNER ENTERPRISES, INC.,

a Nebraska Corporation; and PAUL

ANTHONY FREEMAN,

Defendants and Appellants,

and

GEORGIA M. DAVIS,

Defendant.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Mike Salvagni, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Gig A. Tollefsen, Berg, Lilly, Andriolo & Tollefsen, Bozeman, Montana

For Respondent:

Michael R. McKinstry, Seattle, Washington; Stephen C. Pohl, Bozeman, Montana

Submitted on Briefs: April 30, 1998

Decided: December 30, 1998

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

**¶1. Raymond G. Anderson (Anderson) brought suit against Paul Anthony Freeman (Freeman), Freeman's employer, Werner Enterprises, Inc. (Werner) (collectively Werner/Freeman), and Georgia Davis Bennett (Bennett) to recover damages he sustained as a result of a three-vehicle accident. Anderson settled his claim against Bennett and Bennett was dismissed from the action. Anderson's claim against Werner/Freeman proceeded to a jury trial in June 1997, and a jury verdict and judgment was rendered in favor of Anderson by the Eighteenth Judicial District Court, Gallatin County. Werner/Freeman appeals the jury verdict and certain pre-trial, trial, and post-trial rulings made by the District Court. We affirm.**

**¶2. The following issues are presented for review:**

**¶3. 1. Did the District Court err in denying Werner/Freeman's motion for a Rule 35, M.R.Civ.P. examination of Anderson?**

**¶4. 2. Did the District Court err in applying <u>Plumb</u> to the instant case and dismissing Werner/Freeman's cross-claim against Bennett?**

**¶5. 3. Did the District Court err in granting Anderson's motion for judgment as a matter of law on the issue of Anderson's comparative negligence?**

**¶6. 4. Did the District Court err in denying Werner/Freeman's renewed motion for judgment as a matter of law and motion for a new trial?**

## BACKGROUND

**¶7. This accident occurred on March 17, 1993, at approximately 10:00 p.m. Anderson was driving a loaded semi-truck northbound on Highway 191, a two-lane road, a few miles north of West Yellowstone, Montana. Bennett was driving her car southbound on Highway 191. Behind Bennett was Freeman, also driving a loaded semi-truck. The particular stretch of road on which the three drivers were traveling was extremely icy.**

**¶8. Bennett was rounding a curve and approaching the incline of Horseshoe Hill when she lost control of her car, skidded into the snowbank on the side of the road, and began spinning. At this same time, Anderson had just reached the crest of Horseshoe Hill and was on the decline when he spotted Bennett's car spinning on the road. Anderson was approximately one half mile from Bennett when he spotted her on the road. Anderson managed to avoid a collision by driving his truck off the road into the snowbank without jackknifing or losing control. Bennett's car slid past Anderson's truck. Meanwhile, Freeman, traveling approximately 700 feet behind Bennett, rounded the curve and saw Bennett's car spinning in the road and Anderson's oncoming truck. He applied his brakes but could not stop in time to avoid a collision. Freeman's truck jackknifed and began spinning. On the third revolution, the rear end of Freeman's trailer collided with the front end of Anderson's truck. Before the impact, Anderson's truck was still slowly moving, but the impact immediately stopped Anderson's truck "in its tracks." Bennett's car came to rest at a point 170 feet from where Freeman's and Anderson's trucks collided.**

**¶9. As a result of the accident, Anderson suffered a fractured, dislocated hip. On July 28, 1995, Anderson filed suit against Freeman and Freeman's employer, Werner, because Freeman was in the course of employment at the time of the accident. In the same complaint, Anderson named Bennett as a co-defendant. Anderson alleged that Werner/Freeman and Bennett were negligent in causing the accident, and sought damages for medical expenses, pain and suffering, loss of earning capacity, and loss of established course of life. Werner/Freeman and Bennett filed cross-claims against each other for contribution and indemnity. On May 9, 1997, Anderson settled his**

claim against Bennett. On May 27, 1997, the District Court dismissed Anderson's claim against Bennett and, over the objection of Werner/Freeman, dismissed Bennett's and Werner/Freeman's cross-claims against each other. Anderson's claim against Werner/Freeman proceeded to trial which was held June 2 through June 6, 1997.

¶10. At trial, Werner/Freeman admitted that Freeman was negligent for driving too fast for the conditions. However, Werner/Freeman alleged that Anderson was comparatively negligent for also driving too fast for the conditions and for failing to slow or stop when he had time to do so. At the conclusion of the presentation of evidence, Anderson moved for judgment as a matter of law on the issue of liability, leaving for the jury only the issue of damages. The District Court granted the motion, concluding that there existed no legally sufficient evidentiary basis for a reasonable jury to have found that Anderson was comparatively negligent.

¶11. At the conclusion of the trial, the jury awarded Anderson $690,800 in damages from which the court subtracted $25,000, the amount of Bennett's settlement. Werner/Freeman renewed its motion for judgment as a matter of law and moved for a new trial. The court denied the motions. More facts will be provided as necessary to dispose of the issues presented.

*Issue 1*

¶12. Did the District Court err in denying Werner/Freeman's motion for a Rule 35, M.R.Civ.P. examination of Anderson?

¶13. The District Court has inherent discretionary power to control discovery based on its authority to control trial administration. State ex rel. Guar. Ins. v. District Court (1981), 194 Mont. 64, 67-68, 634 P.2d 648, 650. "Control over pretrial discovery is best exercised by the District Court which is in a better position than this Court to supervise the day to day operations of pretrial discovery." State ex rel. Guar. Ins., 194 Mont. at 68, 634 P.2d at 650. We review discretionary trial court rulings for abuse of discretion. Eagle Ridge Ranch Ltd. Partnership v. Park County (1997), 283 Mont. 62, 65, 938 P.2d 1342, 1344. Furthermore, the party assigning error to the trial court's discovery rulings must show prejudice. In interpreting discovery rules, this Court will reverse the trial judge only when his or her judgment

may materially affect the substantial rights of the complaining party and allow the possibility of a miscarriage of justice. *Granite County v. Komberec* (1990), 245 Mont. 252, 261, 800 P.2d 166, 171, *overruled on other grounds by* Warnack v. Coneen Family Trust (1994), 266 Mont. 203, 214-15, 879 P.2d 715, 722.

¶14. In November 1995, Werner/Freeman sent interrogatories to Anderson asking him whether he was claiming lost earnings and, if so, in what amount. The interrogatories also asked how lost earnings would be calculated, who would testify as to the lost earnings, and with whom Anderson had been employed since the date of the accident. Anderson answered the interrogatories, stating that he was seeking lost earnings in the amount of $87,170, as of October 20, 1995, and that economist Joseph Kasperick would testify as to his lost earnings. Anderson attached Mr. Kasperick's worksheet calculations, and listed Mike Bartholomew, his friend and owner of a logging business, as an employer. In April 1996, Werner/Freeman deposed Anderson and asked him several questions concerning his lost earning capacity and future employability. Anderson stated that he was working for Mike Bartholomew driving logging trucks. When asked whether he expected this employment to continue in the foreseeable future, Anderson replied, "I think that's a good possibility, yeah, I don't know why it wouldn't be."

¶15. Approximately two weeks after Anderson's deposition, his employment with Mike Bartholomew terminated. According to the testimony of Anderson and Mr. Bartholomew, Anderson was terminated because he was no longer healthy enough to do the tasks required of him. Werner/Freeman did not learn of Anderson's termination from employment until January 22, 1997, approximately nine months after Anderson's deposition, and well after the close of discovery. Werner/Freeman learned of Anderson's change in employment status when Anderson supplemented his discovery responses by submitting a new economic report indicating that he had been unemployed for a substantial portion of 1996.

¶16. Upon learning of Anderson's change in employment status, Werner/Freeman moved the court to reopen discovery to allow a Rule 35, M.R.Civ.P. examination (hereinafter Rule 35 examination) of Anderson to ascertain whether Anderson could continue being a logging truck driver and, if not, to ascertain what other employment would be available to Anderson. A hearing was held on the discovery motion at which time Werner/Freeman clarified that it wanted a Rule 35 examination conducted by a vocational rehabilitation expert.

¶17. Anderson opposed the motion on two grounds. First, Anderson refuted allegations that he violated Rule 26(e)(2), M.R.Civ.P., by failing to supplement his prior discovery responses. Anderson claimed that Werner/Freeman's interrogatory asked only for the names of any employers for whom Anderson had worked since the date of the accident, not whether or not Anderson was employed. Upon this distinction, Anderson argued he had no duty to notify Werner/Freeman of his change in employment status.

¶18. Second, Anderson argued that Werner/Freeman's motion was not warranted because Werner/Freeman was on notice that Anderson was claiming an inability to continue working as a truck driver since the commencement of the lawsuit and had ample opportunity to have Anderson examined by an independent vocational expert. Anderson argued that Werner/Freeman made a tactical decision to forego securing a vocational expert, and should not now be allowed to reopen discovery simply to correct a tactical mistake. The court accepted Anderson's arguments and denied Werner/Freeman's request for a Rule 35 examination. However, the court reopened discovery for the limited purpose of allowing Werner/Freeman to depose Anderson and his former employer, Mike Bartholomew, as to the reasons for Anderson's termination from employment.

¶19. Werner/Freeman assigns error to the court's denial of its request for a Rule 35 examination. Werner/Freeman points out that its interrogatory specifically asked Anderson who his employers were and how lost earnings would be calculated. Werner/Freeman asserts that Anderson's lost earnings calculations were dependent upon his post-accident employment. Werner/Freeman argues that because Anderson's change in employment status was material to his lost earnings calculation, Anderson was required to supplement his prior discovery responses and notify Werner/Freeman of his employment termination. Werner/Freeman also points out that Anderson stated in his deposition that he was employed by Mike Bartholomew, and expected to be so employed in the foreseeable future. Werner/Freeman argues that when Anderson's employment terminated, this response was no longer true and Anderson was then obligated to supplement his prior response with the correct information.

¶20. Werner/Freeman further argues that it was prejudiced by the court's refusal to allow a Rule 35 examination. Werner/Freeman asserts that, upon reviewing Anderson's initial discovery responses, it concluded that Anderson's employment as

a logging truck driver was the best evidence to refute his claims of lost earnings, lost earning capacity, and loss of established course of life. Werner/Freeman asserts that it relied on Anderson's discovery responses in deciding to forego securing a damage expert. Werner/Freeman further asserts that when it learned of Anderson's termination from employment, it attempted to secure a vocational expert by moving for a Rule 35 examination. Werner/Freeman argues that the court's refusal to grant the Rule 35 examination precluded it from rebutting Anderson's evidence concerning his damages. Werner/Freeman also claims that Anderson gained an unfair advantage when, during his closing argument to the jury, he brought to the jury's attention the fact that Werner/Freeman had failed to produce any witnesses to rebut the testimony of Anderson's vocational expert.

¶21. We conclude that the court did not err in denying Werner/Freeman's motion for a Rule 35 examination. Although Anderson may have had a duty to disclose the change in his employment status, Werner/Freeman cannot claim surprise or prejudice because Anderson, throughout this litigation, asserted an inability to work as a truck driver and based his damage calculations on the assumption that he would not continue working as a truck driver. The record shows that long before the close of discovery, Werner/Freeman knew that Anderson's treating physician and vocational expert had recommended that Anderson discontinue working as a truck driver. The record also shows that Werner/Freeman knew that Anderson's post-accident employment was motivated by financial necessity and probably would not continue. Werner/Freeman had within its possession the medical notes of Anderson's physician indicating that Anderson "was beginning to finally come to the realization that driving his truck was not something that his body was going to tolerate."

¶22. Despite all indications that Anderson's employment as a truck driver would not continue, Werner/Freeman made the tactical decision to forego conducting an independent examination of Anderson and securing its own vocational expert. Instead, Werner/Freeman chose to attack the credibility of Anderson through cross-examination. Werner/Freeman must now accept the risks of its tactical decisions. We agree with the District Court that, under the circumstances, Werner/Freeman cannot claim surprise and have discovery reopened for the purpose of securing a vocational expert when it had ample opportunity to do so before the close of discovery. We reject Werner/Freeman's claim that the court's refusal to grant the Rule 35 examination precluded Werner/Freeman from developing rebuttal evidence concerning Anderson's damages. Rather, we conclude that it was Werner/Freeman's

trial strategy, not the District Court's ruling, which kept this rebuttal evidence from being fully developed or argued to the jury. Accordingly, we hold that the court did not abuse its discretion in denying Werner/Freeman's motion for a Rule 35 examination.

*Issue 2*

¶23. Did the District Court err in applying Plumb to the instant case and dismissing Werner/Freeman's cross-claim against Bennett?

¶24. The standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. Carbon County v. Union Reserve Coal Co. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

¶25. In early May 1997, Anderson settled his claim against Bennett for $25,000. Thereafter, upon a joint motion filed by Anderson and Bennett, the court dismissed Werner/Freeman's cross-claim against Bennett for contribution and indemnity on the ground that Bennett was not subject to claims of contribution and indemnity pursuant to Plumb v. Fourth Jud. Dist. Ct. (1996), 279 Mont. 363, 927 P.2d 1011.

¶26. Werner/Freeman argues that the court misinterpreted Plumb and, therefore, erred in dismissing its cross-claim against Bennett and preventing the jury from apportioning liability between Bennett and Werner/Freeman. Werner/Freeman notes that in Plumb, we held § 27-1-703(6), MCA, unconstitutional because it violated substantive due process to the extent that it allowed apportionment of liability "to parties who were not named in the pleadings and did not have the opportunity to appear and defend themselves." Plumb, 279 Mont. at 379, 927 P.2d at 1021. Werner/Freeman points out that Bennett was named as a party in the pleadings, and Bennett appeared and defended herself throughout the proceedings until six days before trial. Thus, Werner/Freeman argues, Plumb is distinguishable and does not apply to the instant case. We disagree.

¶27. In State ex rel. Deere v. District Court (1986), 224 Mont. 384, 730 P.2d 396, we interpreted the language in § 27-1-703, MCA (1981), which provides for "contribution . . . proportional to the negligence of the parties against whom recovery is allowed." Based on the plain meaning of this language, we held that

persons who have been released from liability by the claimant are not subject to contribution because they are not "parties against whom recovery is allowed." Deere, 224 Mont. at 393, 730 P.2d at 402. This holding was reaffirmed in Plumb. *See* Plumb, 279 Mont. at 378-79, 927 P.2d at 1021 ("[S]ettling tort-feasors may not be named as third-party defendants for the purpose of contribution"). We noted in Plumb that the above language in § 27-1-703, MCA (1981), was still present in § 27-1-703(4), MCA (1995). Plumb, 279 Mont. at 379, 927 P.2d at 1021.

¶28. We recognize that the above language was stricken in the 1997 amendments to § 27-1-703, MCA, effective May 11, 1997. *See* 1997 Mont. Law, Ch. 429. However, we adhere to the rule that the substantive rights between parties to an action are determined by the law in effect on the date of the injury. Cadwell v. Bechtel Power Corp. (1987), 225 Mont. 423, 425, 732 P.2d 1352, 1354. Further, a statute will not be applied retroactively unless the legislature clearly expressed an intention to so apply it. Cadwell, 225 Mont. at 425, 732 P.2d at 1354. According to 1997 Mont. Law, Ch. 429, the legislature did not intend to apply the 1997 amendments to § 27-1-703, MCA, retroactively. Thus, because the accident in the instant case occurred before the 1997 amendments went into effect, Deere is the applicable law. Because Plumb reaffirmed the Deere rule that settling tort-feasors are not subject to contribution, we hold that the District Court correctly interpreted Plumb and did not err in dismissing Werner/Freeman's cross-claim against Bennett on the basis of Plumb.

*Issue 3*

¶29. Did the District Court err in granting Anderson's motion for judgment as a matter of law on the issue of Anderson's comparative negligence?

¶30. We review a Rule 50(a), M.R.Civ.P. motion for judgment as a matter of law to determine whether the nonmoving party could prevail upon any view of the evidence including the legitimate inferences to be drawn therefrom. Cameron v. Mercer, 1998 MT 134, ¶ 8, 54 St.Rep. 531, ¶ 8, 960 P.2d 302, ¶ 8. Courts will exercise great self-restraint in interfering with the constitutional right of trial by jury. Cameron, ¶ 8. Unless there is a complete absence of any credible evidence in support of the verdict, judgment as a matter of law is improper. Cameron, ¶ 8. In reviewing a motion for judgment as a matter of law, we adhere to the following well-established principles:

We consider only the evidence introduced by the party against whom the directed verdict is granted. If that evidence, when viewed in a light most favorable to the party, tends to establish the case made by the party's pleading, we will reverse the directed verdict. The test commonly used to determine if the evidence is legally sufficient to withdraw cases and issues from the jury is whether reasonable persons could draw different conclusions from the evidence.

Riley v. American Honda Motor Co. (1993), 259 Mont. 128, 131, 856 P.2d 196, 198 (citations omitted).

**¶31. Werner/Freeman argues that the court erred in granting Anderson's motion for judgment as a matter of law on the issue of Anderson's comparative negligence. Werner/Freeman contends that reasonable persons could draw different conclusions from the evidence produced at trial, and that it was possible Werner/Freeman could establish Anderson's contribution as a proximate cause of the accident.**

**¶32. In arguing that Anderson was comparatively negligent, Werner/Freeman cites Nissen v. Johnson (1959), 135 Mont. 329, 333, 339 P.2d 651, 653, for the proposition that a driver has a duty to keep a proper lookout, and Moore v. Jacobsen (1953), 127 Mont. 341, 344, 263 P.2d 713, 715-16, for the proposition that a driver has a duty to take reasonable steps to avoid an accident. Werner/Freeman asserts that the following evidence shows Anderson was driving too fast for the conditions and failed to slow or stop his truck when he had time to do so: (1) several witnesses testified that the road where the accident occurred was extremely icy; (2) Anderson testified in his pre-trial deposition that he was driving 50 miles per hour prior to approaching Horseshoe Hill, and answered "yes" to the question, "and you would have maintained that speed [50 miles per hour] then on through the point of collision with Mr. Freeman's truck?"; (3) Bennett testified that when she lost control of her car and began sliding, she looked off in the distance, saw Anderson's oncoming headlights, and, based on her knowledge as a truck driver, her "reaction" was that Anderson was far enough away that he had time to stop; (4) Officer Schumacher testified that based on Bennett's testimony concerning where she lost control of her car on the road, Anderson would have been roughly the distance of two football fields away from Bennett when Bennett lost control; (5) Anderson testified at trial that he did not remember whether he applied his brakes upon seeing Bennett's spinning car; and (6) Ranger Seibert and Officer Schumacher testified that they did**

not see any skid marks on the road as evidence that Anderson applied his brakes to avoid the accident.

¶33. We reject Werner/Freeman's contention that reasonable persons could draw different conclusions from the evidence concerning Anderson's comparative negligence. First, there exists no evidence supporting Werner/Freeman's assertion that Anderson failed to keep a proper lookout while driving his truck. Second, the above items of evidence are completely lacking in either credibility or foundation to support Werner/Freeman's assertion that Anderson failed to take reasonable steps to avoid the collision.

¶34. With respect to whether Anderson was driving too fast for the conditions, both Ranger Seibert and Loren Davis, another trucker who was traveling in the same direction as Anderson but quite a distance behind him, testified that from West Yellowstone to midway up Horseshoe Hill, the road was dry. Ranger Seibert and Officer Schumacher testified that Anderson's speed of 50 miles per hour was prudent for those conditions. Although the road was icy from the crest of Horseshoe Hill to the point where Bennett lost control, Werner/Freeman offered no credible evidence that Anderson's truck was traveling at a rate of 50 miles per hour over this particular stretch of the road. Despite Anderson's pre-trial testimony that he would have maintained his pre-Horseshoe Hill speed of 50 miles per hour to the point of collision, he testified at trial that he could not remember his speed immediately before the collision, and that he would have maintained his speed of 50 miles per hour *if he had not seen Bennett spinning out of control*. Mr. Davis testified that he traveled the incline of Horseshoe Hill at 35 miles per hour and Officer Schumacher confirmed that, generally, northbound trucks are traveling "very slowly" by the time they reach the crest of Horseshoe Hill.

¶35. With respect to Anderson's ability to stop in time to avoid the collision, Werner/Freeman's evidence is speculative and lacks foundation. Bennett formed her opinion that Anderson had enough time to stop when it was dark and while she was spinning out of control. Bennett testified that she momentarily lost consciousness and never saw the collision. She admitted that everything happened very quickly.

¶36. With respect to whether Anderson applied his brakes, Anderson's statement that he could not remember applying his brakes does not prove that Anderson failed to apply his brakes. Similarly, the absence of skid marks does not prove that

Anderson failed to apply his brakes. Officer Schumacher testified that the change in conditions caused by falling snow, other vehicles traveling by the accident scene, and sand being spread out on the highway immediately after the collision obliterated any skid marks that may have been left by Anderson.

¶37. Although a driver has a duty to keep a proper lookout and to take reasonable steps to avoid a collision, a driver does not have a duty to anticipate injury which comes about only as the result of the negligence of another. Green v. Hagele (1979), 182 Mont. 155, 158, 595 P.2d 1159, 1161. The record shows that Anderson could not have avoided the collision. At trial, Freeman testified:

It's not conceivable, but the only thing he [Anderson] could have done that he didn't do was to come to a complete stop, but that would not have stopped the accident from happening. So I don't think there is a thing he could have done--there is nothing he could have done that he hadn't already done. That was clear to me. He was caught in a situation where there was nothing else he could do.

¶38. Considering Werner/Freeman's evidence, and viewing that evidence in the light most favorable to Werner/Freeman, we are convinced that reasonable persons could draw no other conclusion but that the facts did not support a causal connection between Anderson's actions and his injuries, and that Werner/Freeman could not prevail on a claim of comparative negligence. We hold that the District Court did not err in granting Anderson's motion for judgment as a matter of law on the issue of Anderson's comparative negligence.

*Issue 4*

¶39. Did the District Court err in denying Werner/Freeman's renewed motion for judgment as a matter of law and motion for a new trial?

¶40. The decision to grant or deny a new trial is in the sound discretion of the district court and will not be disturbed absent a showing of manifest abuse of discretion. Baxter v. Archie Cochrane Motors, Inc. (1995), 271 Mont. 286, 287-88, 895 P.2d 631, 632. Generally, a jury award of damages will not be overturned unless it shocks the conscience of the Court. Gibson v. Western Fire Ins. Co. (1984), 210 Mont. 267, 290, 682 P.2d 725, 738. "Where the evidence is substantial, though conflicting, the order

[granting a new trial] will be sustained in the absence of . . . abuse of discretion." Gibson, 210 Mont. at 290, 682 P.2d at 738.

¶41. After the conclusion of the trial, Werner/Freeman renewed its motion for judgment as a matter of law pursuant to Rule 50(b), M.R.Civ.P., and moved for a new trial, pursuant to § 25-11-102(5) and (6), MCA. Werner/Freeman based its motions on the grounds that Anderson's damage award was excessive because it was awarded under the influence of passion or prejudice, and was not supported by sufficient evidence. The court denied the motions.

¶42. On appeal, Werner/Freeman advances the same arguments it advanced in the District Court. With respect to excessiveness, Werner/Freeman likens the instant case to Mauer v. Clausen Distributing Co. (1996), 275 Mont. 229, 237, 912 P.2d 195, 199, wherein the plaintiff requested $90,000 but was awarded $500,000, an amount more than five times that requested. The Court held that the defendant was entitled to a new trial because the plaintiff's award of $500,000 for loss of established course of life was excessive. Mauer, 275 Mont. at 237, 912 P.2d at 199. Werner/Freeman analogizes Mauer to the instant case, noting that Anderson requested $100,000 for loss of established course of life but was awarded $225,000, more than twice the amount requested. On the basis of Mauer, Werner/Freeman argues that Anderson's damage award was excessive and that the District Court erred in denying its motion for a new trial.

¶43. Werner/Freeman also cites a compilation from a publication entitled "Jury Verdict Research" wherein $88,000 is the reported statistical median average of total damage awards for hip fracture cases in which the medical expenses incurred are $25,800, the amount incurred by Anderson in this case. Werner/Freeman argues that because $690,800 is more than eight times the statistical average for similar cases, Anderson's total damage award was excessive. Additionally, Werner/Freeman cites a 1973 Montana case where the plaintiff suffered a fractured pelvis and dislocated hip and received a total damage award of $45,000, an amount fifteen times less than the amount received by Anderson. *See* McGuire v. Nelson (1973), 162 Mont. 37, 508 P.2d 558.

¶44. We reject Werner/Freeman's arguments concerning excessive damages. The mere fact that a damage award exceeds that requested by a plaintiff is not in itself a ground for the grant of a new trial. Gibson, 210 Mont. at 290, 682 P.2d at 738. "It is

only when the excessive damages appear to have been given by the jury under the influence of passion or prejudice that a new trial may be granted.'' Gibson, 210 Mont. at 290, 682 P.2d at 738. Werner/Freeman has failed to present any evidence that the jury was influenced by passion or prejudice.

¶45. Moreover, the authorities on which Werner/Freeman relies are not persuasive. The jury verdict research publication is not legal authority and most certainly would be excluded from a trial as inadmissible hearsay. See Rule 408, M.R.Evid. The verdict in McGuire was rendered twenty-five years ago at a time when the dollar went further than it does today. Moreover, McGuire is distinguishable from the instant case. The verdict in McGuire was based on medical expenses alone; there is no mention of the plaintiff seeking damages for pain and suffering, loss of earnings, or loss of established course of life. McGuire, 162 Mont. at 40, 508 P.2d at 559-60. Lastly, Werner/Freeman's reliance on Mauer is misplaced. In Mauer, we held that the defendant was entitled to a new trial not because the damage award exceeded that requested by the plaintiff, but because the evidence did not support the jury's damage award. Mauer, 275 Mont. at 237, 912 P.2d at 199.

¶46. Werner/Freeman next argues that Anderson's damage award was not supported by sufficient evidence. Werner/Freeman points to the following facts as evidence that Anderson's damage award was not supported by the evidence: (1) a statement made by Anderson's surgeon, Dr. Matthews, indicating that he thought Anderson could return to truck driving; (2) statements by Anderson and Dr. Matthews indicating Anderson had ceased using pain medication since April 1993; (3) Anderson's admission that within a year of his surgery he was able to walk without a limp, and that since 1993, he required no further physical therapy; (4) the fact that Anderson was employed as a truck driver from November 1994 to April 1996; (5) a statement made by Dr. Robinson, Anderson's treating physician, confirming that Anderson's work as a logging truck driver appeared to be an appropriate work environment for Anderson; and (6) Anderson's statement that, since his termination from employment, he had been spending time riding his motorcycle.

¶47. We reject Werner/Freeman's claim of insufficient evidence. We have held:

It is not a question of the amount this Court would have awarded under the circumstances. It is not the amount which in our opinion would compensate the injured party; rather, it is a question of what amount of damages will the record in the case support when viewed . . .

in the light most favorable to the plaintiff.

Barrett v. Larsen (1993), 256 Mont. 330, 339, 846 P.2d 1012, 1018 (citations omitted). This same rule was established in Mauer. In Mauer, we held that the district court did not err in granting a new trial because "an award must be reduced when it substantially exceeds that which the evidence can sustain." Mauer, 275 Mont. at 237, 912 P.2d at 199.

**¶48. A review of the record in the instant case reveals that Anderson produced substantial evidence to support the jury's damage award. Anderson testified that at the time of the accident, he was within one and one half years of completing the payments on his $75,000 semi-truck. Anderson's wife testified that "it was a dream of Ray's since he was a child, to buy his own truck and drive long haul." Anderson started his own trucking business in 1984 with a used truck, then sold it to buy the "plush" $75,000 truck. Anderson testified that he enjoyed the independence and freedom of being self-employed. With respect to owning and operating his own truck, Anderson stated, "you can go where you want to go. I like traveling. And I make good money."**

**¶49. Both Dr. Matthews and Dr. Robinson described Anderson's hip injury as "Pipken 4" meaning the most severe. Dr. Robinson stated, "you don't have a grade 4 injury and get a good result. . . . that's why it's the worst grade for this kind of injury." Dr. Robinson opined that the degenerative process in Anderson's hip would continue and that Anderson may need a second hip replacement. Anderson testified that, despite Dr. Robinson's recommendation that Anderson seek sedentary work, he went back to truck driving after surgery out of financial necessity. Although in one note Dr. Robinson's patient record indicated that Anderson's work environment with Mike Bartholomew was appropriate, the same note stated:**

He [Anderson] may continue with activities as comfort permits, but I still recommend avoiding activities of high impact and avoiding situations where he has to be up on his feet for long periods of time. . . . Only time will tell how long his left hip will perform well over the years.

Anderson stated he no longer took pain medication because "over the years it isn't good for you. It bothers other parts of your body, digestive system, and so on." Anderson

testified that he continues to feel a great deal of pain with any kind of minor lifting, pushing, walking too much, or even sitting too much. Anderson testified that his sexual relationship with his wife is difficult. He testified that he enjoyed riding his motorcycle on occasion, but that it was painful to get on the motorcycle.

**¶50. The vocational rehabilitation expert, Kent Shafer, testified that Anderson's employment prospects were "quite limited" and his "best option" was employment as a trucking dispatcher. Mr. Shafer concluded that if Anderson could not find sedentary work in the trucking industry, his employment would be limited to entry-level, unskilled jobs. The economic expert, Mr. Kasperick, testified that had Anderson not been injured, he would have earned $40,000 in 1993, and his earnings would have increased each year thereafter.**

**¶51. We conclude that the evidence supporting Anderson's damage claims was substantial and straight forward. The record is void of any attempt by Anderson to expand the record for purposes of creating passion or prejudice against Werner/ Freeman. We hold that the District Court did not abuse its discretion in denying Werner/Freeman's renewed motion for judgment as a matter of law and motion for a new trial.**

**¶52. Affirmed.**

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

No

/S/ KARLA M. GRAY