No. 98-445

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 104N

MARK O. BARTEAUX,

Plaintiff and Appellant,

v.

D'ARON JOHNSON,

Defendant and Respondent.

APPEAL FROM: District Court of the Twenty-First Judicial District,

In and for the County of Ravalli,

The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

J. Stuart Bradshaw, Attorney at Law; Stevensville, Montana

For Respondent:

Judith A. Loring, Attorney at Law; Stevensville, Montana

Submitted on Briefs: January 28, 1999

Decided: May 18, 1999

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

**¶1. Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal**

Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2. The plaintiff, Mark O. Barteaux, brought this action against the defendant, D'Aron Johnson, in the District Court for the Twenty-First Judicial District in Ravalli County, to distribute assets and assign liabilities from the parties' partnership in DTS Mechanical. Following a bench trial, the District Court entered a judgment which divided the partnership's assets and assigned its liabilities. Barteaux appeals from the judgment entered. We affirm in part and reverse in part the judgment of the District Court.

¶3. There are four issues on appeal:

¶4. 1. Did the District Court err when it found that a bank loan for a backhoe was a personal obligation of Barteaux?

¶5. 2. Did the District Court err when it found that Barteaux owed Johnson $15,000 as the cost of buying into the partnership?

¶6. 3. Did the District Court err when it used one date to value the partnership bank account and a different date to value the partnership's other assets and liabilities?

¶7. 4. Did the District Court err when it valued the partnership tools and equipment at $10,000?

FACTUAL BACKGROUND¶8. Barteaux and Johnson were equal partners in a commercial refrigeration business, D.T.S. Mechanical, located in Stevensville, Montana. They had an oral partnership agreement, and began working as partners on April 29, 1990. The partnership terminated on January 25, 1993. Johnson continued to operate D.T.S. Mechanical, and Barteaux went into the excavation business. When the partnership was terminated, Barteaux and Johnson were unable to agree on an equitable division of the partnership assets and liabilities.

¶9. In July 1993, approximately seven months after the partnership ended, Johnson

contacted Bjarko, Henningsen & Associates, a certified public accounting firm, and had them prepare a statement of assets and liabilities for the purpose of preparing a partnership termination agreement. The parties disagreed over some of the information in the Bjarko Henningsen report, and were again unable to reach a partnership dissolution agreement.

¶10. On May 1, 1995, Barteaux filed a complaint in the Twenty-First Judicial District Court, Ravalli County, for an equitable division of the partnership's assets and liabilities. The case ultimately went to trial. Prior to trial, the parties stipulated to the following:

1. There was an oral partnership agreement. The partnership terminated on January 25, 1993.

2. The parties were 50/50 owners of DTS Mechanical and were to share equally in profits and losses of the business. This stipulation does not affect defendant's right/ability to argue that plaintiff had not completed his required share of the buy-in at the time the partnership terminated, including but not limited to the issue of whether the plaintiff owed defendant $15,000 for his share of the buy-in.

3. The shop building, its contents, and the partnership vehicles were insured by the partnership with partnership funds during the time the parties were partners.

4. On December 31, 1992, accounts receivable were $19,373, and were partnership assets.

5. The partnership owed Montana Bank at least $4,328. The Citizens State Bank escrow of $12,693 representing the debt on a Ford backhoe was also a partnership debt. Both of these are shown in the Bjarko report.

6. The backhoe that Barteaux took was a partnership asset, and the backhoe debt was a partnership debt.

7. The parties filed additional stipulations as follows regarding the backhoe:

a. Barteaux took the backhoe when he left the partnership.

b. Barteaux obtained a loan from Rocky Mountain Bank in Stevensville, Montana in the amount of $6,583.50 at 9% interest on August 11, 1993 which was secured by the backhoe.

c. The backhoe was repossessed on December 22, 1994; at this time the balance on Barteaux's backhoe loan was $4,672.39.

d. The backhoe sold on March 3, 1995 for $8,525.

e. $5,342.59 was used to pay off Barteaux's loan balance which included an additional $1,000 charged by the bank for repossession costs and attorney fees.

f. $734.62 was applied to Johnson's personal Norwest obligation.

g. $1,250.40 of the repossession sale money is with Rocky Mountain Bank and Barteaux is entitled to this money.

8. DTS Mechanical accounts payable as of 12/31/92 were $30,150.

**¶11. Following a bench trial, the District Court made findings of fact, the essence of which were as follows:**

1. The parties had not agreed to a division of assets or liabilities.

2. The assets of the partnership as of January 25, 1993, the date of termination of the partnership, were as follows:

a. Two motorcycles $ 5,600.00

b. Shop building $47,250.00

c. Contents of Shop $10,000.00

d. Accounts receivable $19,373.00

e. Vehicles (base value only) $13,695.00

f. Heavy equipment $20,243.00

Total $116,161.00

3. On January 25, 1993, the partnership had liabilities of:

a. Accounts payable $30,150.00

b. Montana Bank $ 7,116.00

c. Citizens State Bank $12,693.00

d. Three notes Farmers State Bank $7,272.00

Total $57,231.00

4. The fair market value of the assets of the partnership exceeded the liabilities by $58,930.00.

5. Each partner's one-half share of the assets amounted to $29,465.00.

6. Barteaux took $20,243.00 worth of heavy equipment, one motorcycle valued at $2,800.00, a boom bucket worth $2,000.00 that he got from Orman LaVoie in exchange for a debt LaVoie owed the partnership, and a debt of $12,693.00 (the backhoe debt), which Barteaux did not pay.

7. All other partnership assets remained in the control of Johnson who has liquidated or received cash for most of the partnership assets.

8. Prior to Barteaux joining DTS Mechanical, Johnson was doing business with David Bohrer as an equal 50-50 partner in DTS Mechanical, a business that Bohrer had started.

9. In March 1991, Johnson entered into an agreement with Bohrer to purchase Bohrer's 50% interest in DTS Mechanical for $20,000. Johnson obtained a personal bank loan for $10,000 for the down payment on the buy-out.

10. In approximately March 1991, Barteaux and Johnson orally agreed that Barteaux would pay Johnson $20,000 in order for Barteaux to become a full 50% partner in DTS Mechanical. Barteaux agreed that in exchange for Bohrer's 50% interest in DTS, he would assume Johnson's $20,000 obligation to Bohrer.

11. Payments on Johnson's note to Bohrer were repaid with DTS partnership funds. As a result Johnson payed $5,000 for Barteaux's personal obligation.

12. Johnson's $10,000 obligation to Bohrer was a personal obligation, and Barteaux owed the $10,000 to Johnson for his buy into DTS mechanical. Therefore, Barteaux should have made payments from his share of partnership income. Payments should not have been made from Johnson's share of partnership income.

13. Barteaux personally owed a total of $15,000 to complete his buy-out obligation.

14. Due partly to their inability to pay off Bohrer, Barteaux and Johnson terminated the partnership. Subsequently, Johnson borrowed funds to pay off the debt to Bohrer.

¶12. The relevant portions of the court's conclusions of law are as follows:

1. Johnson is entitled to be reimbursed for his capital contributions beyond what he agreed to contribute, pursuant to § 35-10-401(4), MCA.

2. The court may charge Barteaux's share of partnership assets with any debt he owes to Johnson.

3. Barteaux is solely liable for any debt owed to Orman LaVoie to purchase the backhoe.

¶13. On December 17, 1997, the court issued an opinion and clarification of its findings of fact, conclusions of law, and judgment because it had not included the remaining $15,000 that it found that Barteaux owed to complete the purchase of his share of the partnership in its original judgment. The court also included its finding that Barteaux was personally liable for the LaVoie/backhoe debt, but that because the partnership was still legally liable for the debt, Johnson should pay it out of the trust funds and then proceed personally against Barteaux. On December 30, 1993, the court entered a judgment in favor of Johnson and against Barteaux in the amount of $16,000 for the LaVoie/backhoe note which was turned over to the collection bureau for payment.

¶14. Barteaux filed a notice of appeal on February 18, 1998.

STANDARD OF REVIEW

No

¶15. We review a district court's findings of fact to determine whether they are clearly erroneous. *See Daines v. Knight* (1995), 269 Mont. 320, 324, 888 P.2d 904, 906; *see also* Rule 52(a), M.R.Civ.P. We have adopted a three-part test for determining whether a district court's findings of fact are clearly erroneous. *See Daines,* 269 Mont. at 325, 888 P.2d at 906. The test requires that: (1) we determine whether the findings are supported by substantial evidence; (2) if the findings are supported by substantial evidence, then we must determine whether the evidence was misapprehended by the court; and (3) if the court's findings are supported by substantial evidence that has not been misapprehended by the court, then we may still determine that the finding is clearly erroneous if we are left with a firm conviction that a mistake has been made after reviewing the record. *See Daines,* 269 Mont. at 325, 888 P.2d at 906 (citing *Interstate Production Credit Ass'n v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287).

¶16. When reviewing a court's conclusions of law, we review them to determine whether the court's interpretation of the law is correct. *See Anderson v. Werner Enterprises, Inc.*, 1998 MT 333, ¶ 6, 972 P.2d 806, 811, ¶ 6 (citing *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686).

ISSUE 1

¶17. Did the District Court err when it found that a bank loan for the backhoe was Barteaux's personal obligation?

¶18. When Barteaux left DTS Mechanical, he took a backhoe that was DTS property. The record indicates that the parties agreed that Barteaux could take the backhoe so that he would have a means of making a living after leaving the partnership. Johnson argues that Barteaux should be personally liable for the backhoe debt because Barteaux used the backhoe to make a living after leaving the partnership. Johnson buttresses his argument by asserting that Barteaux used the backhoe as collateral to obtain a loan, and that the backhoe was repossessed because of his failure to pay the personal note that was secured by the backhoe after he left the partnership.

¶19. Johnson, however, also pledged the backhoe as collateral to obtain a loan after Barteaux left the partnership. Moreover, the issue before the District Court was distribution of assets at the time of the partnership dissolution. Finally, Johnson's arguments are contrary to the parties' stipulations.

¶20. Prior to trial, Barteaux and Johnson stipulated that the $12,693 backhoe debt was a partnership debt. With accrued interest, the total backhoe debt was $16,000. They also stipulated that the value of the backhoe was equal to the amount of the debt owed, and that it was partnership property. The stipulation is consistent with the treatment of the backhoe after Barteaux left the partnership. While the backhoe was in Barteaux's possession, and after he had left the partnership, both Barteaux and Johnson took out personal loans pledging the backhoe as collateral. The backhoe was subsequently repossessed and sold on March 3, 1995, for $8,525. A total of $5,342.59 was applied to Barteaux's loan balance, which included an additional $1,000 for repossession costs and attorney fees. The sum of $734.62 was applied to Johnson's personal obligation with Norwest Bank.

¶21. In its findings of fact and conclusions of law, the court, contrary to the stipulations of the parties, determined that the $12,693 backhoe debt was Barteaux's personal obligation. The effect of this was to ignore the stipulations entered into by the parties. Stipulations made by parties are binding on the parties and upon the court. *See* 73 Am. Jur. 2d *Stipulations* § 8 (1974); *see also Webb v. Wolfe* (1988), 230 Mont. 322, 325, 749 P.2d 531, 532; *Hackfeld v. United States* (1905), 197 U.S. 442, 25 S. Ct. 456, 49 L. Ed. 2d 826. We have held that if facts stipulated to by the parties are material, then the stipulations are binding on the court. *Webb*, 230 Mont. at 325, 749 P.2d at 532. In *Webb*, a partnership dissolution, we concluded that the amount the parties stipulated to as the value of the partnership ranch was material because it affected the calculation of the interest of one of the partners. *Webb*, 230 Mont. at 325, 749 P.2d at 532. The parties in *Webb* originally agreed that the debt secured by the partnership ranch was $185,399.30. Subsequently, the parties agreed to amend the pretrial order to show a debt of $175,799.30. *Webb*, 230 Mont. at 324-25, 749 P.2d at 532. The district court, however, used the $185,399.30 figure for the ranch debt. *Webb*, 230 Mont. at 325, 749 P.2d at 532. We stated that:

If the fact stipulated to is material, then the stipulation is binding on the court. "The purpose of such a stipulation is to relieve the parties from the necessity of introducing evidence as to the ultimate fact covered by it. If the fact is material, the court is, as to it, bound by the stipulation. It amounts to a special finding."

*Webb*, 230 Mont. at 325, 749 P.2d at 532 (quoting *Spaulding v. Stone* (1912), 46 Mont.

483, 487, 129 P. 327, 328). We reversed the district court on this issue. *Webb*, 230 Mont. at 325, 749 P.2d at 532.

¶22. In the present case, the parties stipulated that the backhoe was a partnership asset and that the debt on the backhoe was a partnership debt. Such a stipulation is material, because it affects the calculation of the partners' interests. The stipulation also amounted to a special finding by which the court was bound.

¶23. Instead, the court included the $12,693 backhoe debt in the partnership's liabilities. The court then subtracted the partnership liabilities from its assets and credited each partner with half of the remaining assets. Therefore, each partner was charged with one-half of the backhoe debt, or $6,346.10. Then, by its order of December 31, 1997, in which the court awarded judgment against Barteaux and in favor of Johnson in the amount of $16,000 for the backhoe debt plus interest thereon, the court again charged Barteaux for the full amount of the backhoe debt. Finally, the value of the backhoe was deducted from Barteaux's share of the partnership assets.

¶24. The total $16,000 debt on the backhoe should have been included as a partnership debt, and the backhoe should have been listed as a partnership asset in the amount of $16,000. Then, the value of the backhoe should have been deducted from Barteaux's share of the assets.

¶25. We, conclude that the backhoe debt and interest on that amount was a partnership debt. The total $16,000 debt should have been listed as a partnership liability, and half of the liability should have been charged to each partner. No judgment should have been entered against Barteaux in favor of Johnson. Therefore, we reverse that part of the District Court judgment which awarded Johnson $16,000 from Barteaux for backhoe debt.

## ISSUE 2

¶26. Did the District Court err when it found that Barteaux owed Johnson $15,000 as the cost of buying into the partnership?

¶27. The District Court found that Barteaux still owed Johnson $15,000 as the cost of buying into the partnership. Barteaux asserts that the court's finding was erroneous

because he and Johnson orally agreed that in lieu of wages, Barteaux's portion of the profits from the business in 1990 would be applied to his purchase of one-fourth of the partnership, that is, one-half of Johnson's 50% interest. Barteaux worked at DTS from approximately the end of April through December in 1990. Both Barteaux and Johnson testified that they worked very long hours during 1990. At trial, Barteaux introduced a W-2 showing that he only received $5,073.09 wages in 1990. Barteaux further testified as follows:

A. Yes, sir. This is an amended or corrected W-2. And the original amount was $4,417.99. The correct amount is $5,073.09.

Q. Thank you. Would you explain how it is that you worked the kind of hours you just described to the Court for a little better than eight months, and that you received approximately $5,000 in compensation for the entire time?

A. Well, that was exactly the nature of my buy-out of D'Aron Johnson's half of D.T.S. Mechanical. My wages I normally would have made were attributed to the buy-out of his -- half of his half of D.T.S. Mechanical.

¶28. Barteaux also testified that he understood that by the end of 1990 he and Johnson each owned one-fourth interest in DTS Mechanical, and Dave Bohrer owned the other 50% interest. Barteaux introduced into evidence various business and tax records for 1991 naming Barteaux as a partner in DTS Mechanical.

¶29. Barteaux testified that both he and Johnson agreed to buy out Bohrer, and that his name was not on the buy-out agreement because Bohrer and Johnson were the only ones on the financing agreements and other legal documents. He also testified that he and Johnson each accepted 50% of the total $20,000 obligation to buy out Bohrer, and that they made financing arrangements to obtain the money together. Johnson then took out a $10,000 loan, co-signed by Bohrer, to make the down payment to Bohrer. Repayment of the $10,000 down payment loan was made from partnership funds. Therefore, Barteaux and Johnson each paid $5,000 of the down payment to buy out Bohrer. After Barteaux left the partnership, Johnson paid the balance of $10,000 owed on the Bohrer buy-out contract. Barteaux acknowledged that he owes Johnson $5,000 for the remainder of the $10,000 purchase price paid to

**Bohrer.**

**¶30. Johnson's testimony at trial regarding the financial arrangement between him and Barteaux went as follows:**

Q. Now, you heard Mr. Barteaux testify that he came and started work for D.T.S. Mechanical about the end of April 1990?

A. That sounds correct.

Q. Okay. When he came, was he immediately a partner?

A. No, he was not.

Q. Had you had discussions with him before he came as to how he would be paid, or how he would fit into the business?

A. We probably didn't work out enough details. And that's why we are here today. But our initial agreement was to kind of survive and do what we could until he [Barteaux] could learn the trade.

Johnson further testified to the following regarding the Bohrer buy-out:

Q. So he [Bohrer] would have left maybe late '90?

A. Correct.

Q. What was the agreement you reached with Dave Bohrer in terms of purchasing the remaining 50 percent?

A. I think it's already an exhibit. But I was to pay him $20,000 for his half interest in the company. And the terms of that were a $10,000 down payment that we obtained through a loan at Montana Bank. And the balance due at the end of the contract.

Q. And I think Mr. Bohrer testified that he cosigned that loan with you?

A. Yes, he did.

Q. Who paid the loan, that loan, back?

A. Out of company proceeds.

Q. Okay. So the balance, the $10,000 balance, was it your understanding that Mr. Bohrer expected monthly payments?

A. We had discussed that, yes.

Q. Okay. Were you able to make monthly payments?

A. No. We were not.

Q. Okay. Did you have discussions with Mark at about the time you were doing the Bohrer contract that Mark was going to then become part of the partnership with you?

A. In lieu of fulfilling the Bohrer contract, that would be correct.

Q. What do you mean in lieu of fulfilling the Bohrer contract?

A. Basically that would mean that I already owned half of the business. And for Mark to obtain the other half of the business, he had to fulfill that contract as if it was his.

Q. And so he would have ended up paying the full $20,000?

A. Yes.

¶31. Evidence of the parties' agreement was disputed. The District Court found that payment for the loan to Johnson for the down payment to Bohrer should not have been paid from partnership funds. Additionally, the court found that making the payments from partnership funds resulted "in Johnson paying an extra $5,000.00 for Barteaux's personal obligation to Johnson." The court then found that Barteaux owed Johnson $15,000 to complete his share of the buy-in.

¶32.We have held that "[d]ue regard is to be given the trial court's ability to judge the credibility of the witnesses." *Interstate Production Credit Ass'n v. DeSaye* (1991), 250 Mont. 320, 324, 820 P.2d 1285, 1287 (citing Rule 52(a), M.R.Civ.P.). In *Interstate Production,* we further held that it is not our function to substitute our judgment for the judgment of the trier of fact. *Interstate Production*, 250 Mont. at 324, 820 P.2d at 1287 (citing *Wallace v. Wallace* (1983), 203 Mont. 255, 661 P.2d 455). We will affirm the findings of a trial court sitting without a jury unless the findings are clearly erroneous. *Interstate Production*, 250 Mont. at 322, 820 P.2d at 1287. Moreover, it is the duty of the trial court to resolve conflicts in evidence where opposing evidence is presented. *Interstate Production*, 250 Mont. at 324, 820 P.2d at 1287. We therefore conclude that there was substantial evidence to support the District Court's finding that Barteaux owed Johnson $15,000 for his share of the partnership and that that

**finding was not clearly erroneous.**

ISSUE 3

**¶33. Did the District Court err when it used one date to value the partnership bank account, and a different date to value all of the other partnership assets and liabilities?**

**¶34. Seven months after Barteaux left DTS, Johnson furnished data to Bjarko, Henningsen & Associates, an accounting firm, for the purpose of preparing a report to be used in drafting a termination agreement between Barteaux and Johnson. The report states that assets and liabilities were valued as of December 31, 1992, and listed accounts payable in the amount of $30,150 on that date. The Bjarko Henningsen report listed the bank account balances as zero. In its findings of fact, the District Court incorporated the figures from the Bjarko Henningsen report, and listed the accounts payable as $30,150. The court listed no bank account assets.**

**¶35. At trial, Barteaux introduced a bank statement into evidence showing assets of $10,956 in the business account and an additional $1,005 business certificate on December 31, 1992. Johnson testified that checks written on the bank account brought the account balance to zero and, therefore, it was not included in the Bjarko Henningsen report. Barteaux argues that because the liabilities and other assets were determined as of December 31, 1992, the bank accounts should also be determined as of that date, or that since the checks were written to pay business expenses, liabilities as of December 31, 1992, should have been reduced accordingly.**

**¶36. We agree that all of the partnership liabilities and assets, including the bank accounts, should have been valued as of December 31, 1992. If the bank accounts were reduced by nearly $12,000 to reflect checks written, then the accounts payable should also have been reduced by an equal amount to reflect the amounts paid on those accounts. There was no evidence introduced showing that the accounts payable were reduced by $12,000. As such, the amounts in the bank accounts on December 31, 1992, should have been listed as a partnership asset.**

**¶37. After reviewing the record, we conclude that no substantial credible evidence existed to support a finding that the bank account had a zero balance on December 31, 1992. We, therefore, reverse the decision of the District Court on this issue and**

**remand for findings consistent with this opinion.**

## ISSUE 4

**¶38. Did the District Court err when it valued partnership tools and equipment at $10,000?**

**¶39. At trial, Barteaux testified that he had personal knowledge that the contents of the partnership shop, including tools and equipment, were worth $20,000 at the time he left the partnership. He also introduced insurance documents showing that the shop contents were insured for $20,000 when he left the partnership. Bill Brunson, Jr., a DTS employee who worked in the shop while Barteaux was with DTS and at the time Barteaux left the partnership, corroborated Barteaux's testimony.**

**¶40. In contrast, on direct examination Johnson testified as follows:**

Q. Okay. In terms of what was partnership contents in the shop building in

January of '93, was it of negligible value?

A. With including everything that we have discussed today, and what Mark took and received value for, yes, it was.

On cross-examination, Johnson further testified to the following:

Q. So you are saying that the $20,000 in [shop] contents that was insured as of the time Mark left is reflected somehow in this calculation?

A. Yes, it is.

Q. Can you show me where? I don't see it.

No

A. Yes. It is real simple, if you will just allow me to indulge for a moment.

Q. Just answer the question.

. . . .

Q. I asked you where the $20,000 shows up in the accounting. I understand you to say that you somehow made adjustments in some of the other figures to account for that.

A. No. You are asking about the policy value, or the actual inventory value?

Q. Both.

A. Why would a policy value be relevant to - - there may have been only $10,000 worth of tools in there, Stuart.

Q. I understand that you are contesting that. But I thought we had established that the partnership had it insured for $20,000 at the time Mark left, the contents. And I am just asking you to show me where it is in your accounting of the assets? I still don't see it.

A. Obviously it does not appear as a line item.

Q. But it is hidden in the other items?

A. Arguably.

**¶41. Barteaux testified that the contents of the shop were worth $20,000. Johnson testified that the contents of the shop had negligible value, but may have been worth only $10,000. There was also evidence that not all the shop contents belonged to the partnership. We conclude that the District Court valuation of the shop contents which belonged to the partnership was within the range of values supported by the evidence, and was not clearly erroneous.**

**¶42. Accordingly, we affirm the District Court in part and reverse in part and remand for entry of findings and judgment consistent with this opinion.**

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ WILLIAM E. HUNT, SR.

/S/ KARLA M. GRAY